EXHIBIT __N__

%.AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of      NEW JERSEY

HO MYUNG MOOLSAN CO., LTD.,
and HYUN-SONG KANG

**SUMMONS IN A CIVIL ACTION**

V.

YOUNG-GIL JEE, KYUNG-SOOK SONG,
and JOHN DOES AND JANE DOES 1-5

CASE NUMBER:     *07-4004*
*(DMC)*

TO: (Name and address of Defendant)

    THE ABOVE-NAMED DEFENDANT(S)

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

    MICHAEL S. KIMM, ESQ.
    190 Moore Street, Suite 272
    Hackensack, NJ 07601

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

WILLIAM T. WALSH

_____      *8-22-07*

CLERK                                              DATE

**DIANNE C. RICHARDS**

(By) DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED-CLERK
U.S. DISTRICT COURT
2001 MAY 21  A 11: 13

MICHAEL S. KIMM, ESQ.
190 MOORE STREET, SUITE 272
HACKENSACK, NEW JERSEY 07601
TEL: 201-342-3377
FAX: 201-342-0555
*Attorney for Plaintiffs*

| | |
|---|---|
| HO MYUNG MOOLSAN CO., LTD., and HYUN-SONG KANG,<br><br>Plaintiffs,<br><br>v.<br><br>YOUNG-GIL JEE, KYUNG-SOOK SONG, and JOHN DOES AND JANE DOES 1 THROUGH 5,<br><br>Defendants. | 07 CV 4004<br>(DMC)<br><br>**Complaint for damages with jury demand** |

## PRELIMINARY STATEMENT

Plaintiffs Ho Myung Moolsan Company, Limited, and Hyun Song Kang, for their complaint against the above-named defendants, state upon knowledge, except where indicated otherwise, as follows:

## THE PARTIES

1. At all relevant times, plaintiff Ho Myung Moolsan Company, Limited, was and still is an entity organized and existing under Korean law and as its principal place of business at #654-85 Deung-chun-dong, Gang-seo County, Seoul, Korea.

1

2. At all relevant times, plaintiff Hyung Song Kang was and still is an individual having a residence and domicile in Seoul, Korea, c/o #654-85 Deung-chun-dong, Gang-seo County, Seoul, Korea.

3. At all relevant times, defendant Young Gil Jee was and still is an individual having a Korean citizenship and nationality whose principal place of residence and domicile is 31 Cobblestone Crossing, Norwood, Bergen County, New Jersey 07648. Defendant Young Gil Jee is known as the husband of defendant Kyung Sook Song. Defendant Young Gil Jee committed acts and omissions giving rise to this action on behalf of himself and his wife, and both husband and wife defendants benefitted directly from defendant Young Gil Jee's acts and omissions.

4. At all relevant times, defendant Kyung Sook Song was and still is an individual having a Korean citizenship and nationality whose principal place of residence and domicile is 31 Cobblestone Crossing, Norwood, Bergen County, New Jersey 07648. Defendant Kyung Sook Song is known as the wife of defendant Young Gil Jee.

5. At all relevant times, defendants John Does and Jane Does 1 through 10 are individuals whose true identity and address are presently unknown to plaintiff. These fictitious defendants' true identities and addresses will be developed during the progress of this action and joined as and when appropriate.

6. These "John Doe" and "Jane Doe" defendants are relevant to this action and may be liable for their role in the conspiracy and attendant acts to enable the named-defendants'

2

use of false documents to obtain a financial advantage from plaintiffs.

## JURISDICTION AND VENUE

7. The Court has jurisdiction based on the basis of federal-question under 28 U.S.C. §§ 1331, 2201; 18U.S.C. § 1961 et seq. The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. Section 1391 because defendants reside in this district.

## COMMON ALLEGATIONS

9. In June 2004, defendant Young Gil Jee brought forth a "business proposal" to plaintiff Hyun Song Kang. At that time, defendant Young Gil Jee was a Director of the Korean Journalists Federation, a position unrelated to plaintiffs, but he was also an advisor and agent, owing a fiduciary duty, to plaintiff Hyun Song Kang and, later, also to Ho Myung Moolsan Co., Ltd., formed to implement Hyun Song Kang's entry into the "Manitou Springs" mineral water business relevant to this lawsuit.

10. Plaintiff Hyun Song Kang is a business person in Korea with significant business accomplishments and engagements. Currently, he is Chairman of five separate business entities including a cosmetics manufacturer/distributor named Hwajin Cosmetics Co., Ltd., having a network based sales force of 70,000 agents; and an entertainment television production studio known as "Gayo TV," which serves the Republic of Korea having a population of approximately 45 million persons. Plaintiff Hyun Song Kang is the sole

3

shareholder of plaintiff Ho Myung Moolsan Co., Ltd.

11.    Upon information and belief, defendant Young Gil Jee perceived that his principal and businessman, plaintiff Hyun Song Kang, could be induced to "invest" a certain sum of money. At that time defendant Young Gil Jee and his wife, co-defendant Kyung Sook Song, were planning to transplant their family in the United States to further the educational objectives of their son. They, and each of them, schemed to defraud money from plaintiff Hyun Song Kang and to use the defrauded money for their personal gain and uses in the United States.

12.    The scheme perpetrated by defendants was extensively planned, and it was orchestrated over a substantial period of time, spanning over a year, with various false and fraudulent documents used to "bait" plaintiffs.

13. In approximately June 2004, defendant Young Gil Jee approached plaintiff Hyun Song Kang with a business proposal to acquire the rights to sell mineral-spring water from the historic natural mineral water site known as Manitou Mineral Water Springs, located at Manitou Springs, Colorado.   Defendant Young Gil Jee was a confidant of plaintiff Hyun Song Kang. According to defendant Young Gil Jee, because plaintiff Hyung Song Kang was already engaged in the business of direct-sales of cosmetics, primarily to homemakers, selling Manitou Springs mineral water would complement the beauty and cosmetics business and could be effectively sold and distributed through the 70,000 sales agents of Hwajin Cosmetics Company owned by plaintiff Hyun Song Kang.

4

14. At all relevant times, defendant Young Gil Jee represented that an individual known as O Yoon Kwon (Kwon) resides at 118 East 60th Street, Apartment 14H, New York, New York 10022, and was and is "president" of a company known as Manitou Mineral Water, Inc., which owned the exclusive rights to the land that produced Manitou Springs mineral water, and that he, defendant Young Gil Jee, would obtain a contract for benefit of plaintiff Hyun Song Kang to sell mineral water throughout the world.

15. Defendant Young Gil Jee persuaded plaintiff Hyun Song Kang to finance and organize a new entity in Korea to engage in the mineral water business throughout the world. Plaintiff Hyun Song Kang retained professionals and organized a business corporation known as Ho Myung Moolsan Company, Inc., and funded the company with his personal funds. Between 2004 and 2005, plaintiff Hyun Song Kang invested Korean funds of approximately $2.3 million (US) into, and for benefit, of Ho Myung Moolsan Company, to launch the world-wide mineral water sales business.

16. Defendant Young Gil Jee then persuaded plaintiff Hyun Song Kang that a second, locally-established "operating entity" would have to be formed in the United States to "deal with" global shipping issues. He persuaded plaintiff Hyun Song Kang to appoint him as President of the locally-established branch of Ho Myung Moolsan Company, Ltd. Shortly thereafter, in approximately Winter 2005, Ho Myung America, Inc., was organized in New York. The primary purpose of Ho Myung America, Inc., was to process orders and shipments. Due to the problems that later ensued, caused substantially by defendants'

5

fraudulent acts and omission, Ho Myung America, Inc., has effectively ceased business activities.

17. In order to display the "good faith" of his business proposal, defendant Young Gil Jee brought various documents about Manitou Mineral Water, Inc., the company said to be wholly owned by O Joon Kwon. Those documents were all intended to "show" plaintiffs that he alone was holding the opportunity to develop the global mineral water sales business through O Joon Kwon.

18. Defendant Young Gil Jee persuaded plaintiff to entrust the Manitou Springs mineral water business in his hands, and plaintiff did so. Plaintiffs permitted defendant Young Gil Jee to use plaintiffs' funds to acquire the business rights and appointed him as president of the local entity. Plaintiff reasonably and detrimentally relied upon defendant Young Gil Jee's statements and representations, and allocated $2.3 million to purchasing the world-wide sales and distribution rights to the Manitou Springs mineral water business, between 2004 and 2005. Plaintiffs paid money as follows:

## MONEY TRANSFERRED BY PLAINTIFFS

| Date | Ps' actual payments to Jee Amount (Korean Won ₩) | As posted by Fed Reserve Exchange rate on 03-05 U.S. $ ($1 = ₩1005.00) |
|------|---------------------------------------------------|-------------------------------------------------------------------------|
| 8-20-2004 | ₩  240,000,000 | |
| 12-20-2004 | ₩1,650,000,000 | |
| 12-20-2004 | ₩  330,000,000 | |
| 3-18-2005 | ₩  132,538,900 | |
| 3-18-2005 | ₩   10,000,000 | |
| TOTAL ₩⇒$ | ₩2,362,538,900 | $2,350,785.00 (approx.) |

19. Defendant Young Gil Jee advised and persuaded plaintiffs to finance the project stating that the funds were to be used to acquire the water rights, at a cost of $2 million, allocated to $1 million for the acquisition of rights and $1 million for prepaid water supply; and further allocated an addition sum of approximately $100,000 to establish a New Jersey-based entity that would process orders and shipments, known as Ho Myung America, Inc. Defendant Young Gil Jee also induced plaintiffs to allocate a further $200,000.00 for fluctuations in the foreign exchange rate of the Korean Won, so that the $2 million requirement would be adequately funded.  Plaintiffs proceeded in reliance upon the truth of defendant Young Gil Jee statements and representations.

20. In or about December 2004, defendant Young Gil Jee purportedly obtained a contract for such "global exclusive rights" to the mineral water sales business from O Yoon Kwon, and presented a one-page "Contract" document, showing an acquisition price of $2 million, which consisted of $1 million for the rights and an additional $1 million as prepayment for the water supply in 1 Liter bottles. That "Contract," in original Korean form and in English translation form, is annexed hereto as Exhibit 1.

21. Simultaneously, defendant Young Gil Jee provided an identical "Contract" document to transfer the rights to plaintiff Hyun Song Kang.  The identical contract, in original Korean form and in English translation form,  is annexed hereto as Exhibit 2.

22. After the mineral water business was established, plaintiffs received 307,032 bottles of water for sale and distribution in Korea but Manitou Mineral Water, Inc., and its

7

stated-principal, O Yoon Kwon, failed to perform their contractual obligations. In approximately late 2006 and early 2007, Kwon and Manitou Mineral Water, Inc., claimed that operating funds were inadequate to cover their own factory operations going.

23. During this stage, plaintiffs met with Kwon on several occasions, and reviewed ways to improve the business relationship between the parties. During the course of these meetings, plaintiffs learned, for the first time, that defendant Young Gil Jee had used a dual-contract means to obtain a financial gain from plaintiffs without advance disclose of the intended gain. In fact, defendant Young Gil Jee had simultaneously made and entered into an identical "Contract" with Manitou Mineral Water, Inc., with the only exception that, under one form the acquisition price was price was $1 million and the prepayment for water supply was $1 million (Exhibit 1) and under a second form the acquisition price was $500,000 and the prepayment for water supply was another $1 million (Exhibit 3).

24. In December 2004, defendant Young Gil Jee was paid $2 million equivalent in Korean currency (Won) to acquire the mineral water supply rights under the auspices of plaintiff Ho Myung Moolsan Company, Ltd. The funds were held by defendant Young Gil Jee for approximately three months and were then used to pay $1.5 million to Manitou Mineral Water, Inc. Plaintiffs believe that defendant Young Gil Jee embezzled the difference of $500,000.00.

25. Defendant Young Gil Jee had made a phony "Sale Contract" whereby Ho Myung America, Inc., the wholly-owned subsidiary of Ho Myung Moolsan Co., Ltd., purported to

8

have "sold" the "corporation" (i.e., Ho Myung America, Inc.) and "the business rights" (i.e., the mineral water supply business) to Ho Myung Moolsan Company, which funded the business in the first place. Defendant Young Gil Jee falsely affixed a personal "seal" of Ho Myung Moolsan's president, Mrs. Jeong Hee Kim, so as to make the "Sale Contract" look real, and submitted the document for bank processing of an international wire transfer to the United States.

26. In a scheme to steal money from the sum of $2 million allocated on December 20, 2004, by plaintiffs, to acquire the mineral water supply rights under the auspices of Ho Myung Moolsan, defendant yet again resorted to a dual-documentation scheme, whereby phony wire transfer requests were made in two separate amounts for the "same" transaction — relating to the $2 million plaintiffs paid on the contract. Simultaneously dated March 14, 2006, one version used the real $2 million figure; Exhibit 4; but a second version used a $1.6 million figure, in which he forged the signature and personal seal of Ho Myung Moolsan president, Mrs. Jeong Hee Kim, Exhibit 5. These false documents were, in fact, made and one of them was processed through a bank for international distribution from Korea to the United States, in order to shield defendant's embezzlement of funds.

27. After the funds were fraudulently transferred from Korea to the United States, defendant Young Gil Jee, upon information, paid $1.5 million total to Manitou Mineral Water, Inc., in alleged "fulfillment" of one of the two identical contracts fraudulently made for such purpose. The difference of $500,000.00 from the total $2 million allocated by

9

plaintiffs. All of those sums, upon information and belief, were wholly or substantially used to purchase the residential property generally known as 31 Cobblestone Crossing, Norwood, New Jersey 07648. The closing of title for that property was held on May 17, 2005; and the deed to the house is attached hereto as Exhibit 6.

28. In addition, defendant also purchased for his personal gain an automobile at a cost of $50,000 without plaintiffs' permission using plaintiffs' funds earmarked for the local business operations of Ho Myung America, Inc.

29. At all relevant times, defendant Young Gil Jee owed a duty of loyalty and fidelity and was obligated to disclose the true nature of the "investment" related facts, including the real acquisition price for the water supply rights. Plaintiffs had a right to know that the supply agreement contemplated a payment of $1.5 million of which $500,000 would be used to acquire the rights. Defendant Young Gil Jee stated and represented that the information he provided to plaintiffs was the "true and complete" state of the information relating to the water supply business, and that defendant Young Gil Jee expected to gain a benefit for himself in the capacity of the new position as head of Ho Myung America, Inc..

30. Yet, through deceptive, false, fraudulent self-dealing activities, and through the manufacture and use of sham documents, including the dual "Contracts" for the water supply rights shown above, defendant Young Gil Jee actively committed various acts in violation of the law, as stated below. His wife and co-defendant Kyung Sook Song, conspired, participated, abetted and otherwise benefitted from the illegal activities of defendant Young

10

Gil Jee.

31. Defendants' acts and omissions were willful, wanton, deliberate and malicious and significant punitive damages are warranted against them, jointly and severally.

## CLAIMS FOR RELIEF

### Count One — State law conversion

32. Paragraphs 1 through 31 are incorporated by reference.

33. By reason of those facts, defendants committed conversion of funds from plaintiff in the sum of $500,000.00 from the acquisition price of the water supply rights, and approximately $100,000.00 of funds personally used by defendant Young Gil Jee to purchase a new car and for other things.

34. Despite the fact that plaintiff has requested return of the funds, defendants have failed and refused to return the funds to plaintiff, and have taken steps to permanently deprive the plaintiffs of those funds.

### Count two — State law theft of corporate funds

35. Paragraphs 1 through 31 are incorporated by reference.

36.    By those acts and omissions, defendant Young Gil Jee intentionally misappropriated funds earmarked for a stated business objective, and caused plaintiffs to suffer an undue financial loss. Plaintiffs' loss consists of the sum of $500,000.00 from the acquisition price of the water supply rights, and approximately $100,000.00 of funds personally used by defendant Young Gil Jee to purchase a new car and for other things.

11

### Count three — State law breach of fiduciary duty

37. Paragraphs 1 through 31 are incorporated by reference.

38.    Because defendant Young Gil Jee owed a duty of fidelity and loyalty at the relevant times, it was a violation of his fiduciary duty to scheme to secret and convert plaintiffs' funds under the phony guise of a "higher" acquisition price of the water supply rights. Defendants' acts and omissions constitute breach of defendant Young Gil Jee's fiduciary duty. Plaintiffs' loss consists of the sum of $500,000.00 from the acquisition price of the water supply rights, and approximately $100,000.00 of funds personally used by defendant Young Gil Jee to purchase a new car and for other things.

### Count four — State law misrepresentation

39. Paragraphs 1 through 31 are incorporated by reference.

40. At the relevant times, defendant Young Gil Jee stated that he was going to serve as an officer of plaintiffs' United States-based operational company, which came to be known as Ho Myung America, Inc., where he became "president" of the local entity. Plaintiffs relied upon these and other material statements and financed the business with the amount of "required funds" disclosed by defendant Young Gil Jee in a sum exceeding $2 million.

41.    When defendant Young Gil Jee made those statements, in fact, he knew and intentionally withheld his knowledge that the acquisition price had a hidden, undisclosed $500,000.00 benefit for himself, which was unreasonable and unjustified and in violation of

12

defendant Young Gil Jee fiduciary status in relation to plaintiff.

42.    Plaintiffs reasonably and justifiably relied upon defendant Young Gil Jee statements and representations, and have been damaged. Plaintiffs' loss consists of the sum of $500,000.00 from the acquisition price of the water supply rights, and approximately $100,000.00 of funds personally used by defendant Young Gil Jee to purchase a new car and for other things.

### Count Five – Substantive RICO Violations

44. Paragraphs 1 through 42 are incorporated by reference.

45.    Defendants, under the leadership of defendant Young Gil Jee, have committed violations of the State and Federal RICO Act by being employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

#### Racketeering Enterprise

46. Defendants and certain of them and certain others involved in the vents, including O Yoon Kwon and Manitou Mineral Water, Inc., under the leadership of Young Gil Jee, formed an association-in-fact constituting an "enterprise," as defined by 18 U.S.C. section 1961(4) (hereinafter "the Enterprise"), composed of a group of individuals and at least one entity who were, at the relevant times, associated in fact. This Enterprise was engaged in, and its activities affected, interstate and international commerce, including various acts of

13

mail fraud and wire fraud violations.

47. In addition to the Enterprise discussed above, some of those individuals as well as other individuals, including Nam In Jhon, have an interest in another "Enterprise" consisting of the water supply business under the auspices of Manitou Mineral Water, Inc. This Enterprise too was engaged in, and its activities affected, interstate and foreign commerce, and benefitted from various acts of mail fraud and wire fraud violations by those involved.

48. The foregoing associations-of-fact will be collectively referred as "Enterprise."

### Purpose of the Enterprise

49. The purpose of the Enterprise included the following:

A. Obtaining approximately $2,300,000 or more through the commission of unlawful activities, including among other things, mail fraud, wire fraud, and embezzlement in connection with plaintiff's business or property; and

B. Preserving and protecting the power and viability of the Enterprise through fraudulent actions; and acquiring wealth and benefits that would otherwise not be available to defendants.

### Means and Methods of the Enterprise

50. The members and associates of the Enterprise conducted and participated their affairs in furtherance of their criminal enterprises by means of the following, and others:

A. they committed two or more predicate acts of mail fraud by sending phony

14

documents claiming to grant the "world wide rights" to the mineral water supply business known as Manitou Mineral Water, Inc.;

B. they committed two or more predicate acts of wire fraud by transmitting materially false representations concerning the "world wide rights" to the mineral water supply business known as Manitou Mineral Water, Inc.;

C. they committed one or more acts of embezzlement of funds belonging to plaintiffs, intended for operational uses of plaintiffs' business, by taking without permission money in the sum of approximately $600,000.;

D. they committed other acts which were fraudulent or otherwise in violation of the law.

## Racketeering Violation

51. From approximately June 2004, for more than a year, with plans to continue well into the future, in this District and in other districts, the named defendants, together with others known and unknown, being persons employed by and associated with the Enterprise described above, which was an Enterprise engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, willfully, and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that Enterprise through a pattern of racketeering activity, through the commission of various racketeering acts, as stated in this complaint.

## Pattern of Racketeering Activity

15

52. The pattern of racketeering activity, as defined in 18 U.S.C. Sections 1961 (1) and 1961(5), consisted of the following racketeering acts, among numerous others, committed before and after the following acts:

### Racketeering Act One — mail fraud

53. In June 2004, defendants, through defendant Young Gil Jee, sent documents in the international commerce, and through the instrumentalities of the United States postal system, showing a false and fraudulent scheme to obtain approximately $600,000 or more of secret gains by way of the dual-invoice method.  Defendants, under the leadership of Young Gil Jee, prepared, executed and disseminated false and phony documents through the United States mails and in the international commerce, and thereby committed mail fraud.

### Racketeering Act Two — wire fraud

54. On or about August 10, 2004, defendants, through Young Gil Jee, verbally reiterated the terms of the June 2004 business proposal, and reiterated the material false and fraudulent terms in order to induce plaintiff to transfer the sum of ₩240,000,000 (Korean Won) for the business purposes presented by defendant.

### Racketeering Act Three — wire fraud

55. On or about December 20, 2004, defendants, through Young Gil Jee, verbally reiterated the terms of the June 2004 business proposal, and reiterated the material false and fraudulent terms in order to induce plaintiff to transfer the sum of ₩1,650,000,000 (Korean Won) for the business purposes presented by defendant.

16

### Racketeering Act Four — wire fraud

56. On or about December 20, 2004, defendants, through Young Gil Jee, verbally reiterated the terms of the June 2004 business proposal, and reiterated the material false and fraudulent terms in order to induce plaintiff to transfer the sum of ₩330,000,000 (Korean Won) for the business purposes presented by defendant.

### Racketeering Act Five — wire fraud

57. On or about March 18, 2005, defendants, through Young Gil Jee, verbally reiterated the terms of the June 2004 business proposal, and reiterated the material false and fraudulent terms in order to induce plaintiff to transfer the sum of ₩132,538,900 (Korean Won) for the business purposes presented by defendant.

### Racketeering Act Six — wire fraud

58. On or about March 18, 2005, defendants, through Young Gil Jee, verbally reiterated the terms of the June 2004 business proposal, and reiterated the material false and fraudulent terms in order to induce plaintiff to transfer the sum of ₩10,000,000 (Korean Won) for the business purposes presented by defendant.

### Racketeering Act Seven — wire fraud

59. On March 14, 2006, defendant Young Gil Jee created identical "Sale Contract" forms and used one of them fraudulently to send a wire transfer to the United States in the sum of $1.6 million and embezzled the remaining sum. These acts constitute wire fraud in the international commerce.

17

## Count Five — Substantive RICO Violations

60. Paragraphs 1 through 59 are incorporated by reference.

61. By reason of the foregoing facts, defendants violated various parts of the RICO Act, including the substantive provisions of 18 U.S.C. section 1962.

62. Defendants have violated subsection (a) by receiving income derived from a pattern of racketeering activity and has used such income to acquire an interest, or the establishment or operation of any enterprise which is engaged in interstate or international commerce.

63. Defendants have also violated subsection (b) as they have, through the commission of a pattern of racketeering activity acquired or maintained, directly or indirectly, any interest in or control over any enterprise which is engaged in interstate or foreign commerce.

64. Defendants have also violated subsection (c) as they have been employed by such enterprise engaged in interstate or foreign commerce which directly or indirectly participated in the affairs of the enterprise through the commission of a pattern of racketeering activity.

## Count Two — Conspiracy to Commit RICO Violations

65. Paragraphs 1 through 64 are incorporated by reference.

66. By agreeing to commit violations of subsections (a), (b) and (c), defendants conspired to violate the conspiracy provision of 18 U.S.C. section 1962(d).

## RELIEF SOUGHT

WHEREFORE, plaintiffs respectfully demand:

18

A. compensatory damages in the sum of at least $600,000.00, jointly and severally;

B. punitive damages in a sum to be determined upon trial, jointly and severally;

C. disgorgement of all financial gains defendants have derived from their acts and omissions against plaintiffs;

D. treble damages;

E. counsel fees and costs

F. any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated: August 20, 2007

Respectfully,

/s/ Michael S. Kimm

Attorney for plaintiff

19

# Exhibit 1

# CONTRACT

This contract has been agreed made between O Yoon Kwon ("Party A"), president of Manitou Mineral Water, and Young Gil Jee ("Party B"), director of Journalists Federation of Korea, in regards to sales of Manitou Springs Mineral Water.

Manitou Mineral Water

1)  "Party A" hereby appoints "Party B" as the exclusive distributor for Manitou Springs Mineral Water.

2)  "Party B" shall pay to "Party A", in advance, One Million Dollars (USD $1,000,000) in order to obtain distributorship, and shall pay additional One Million Dollars (USD $1,000,000), in advance, in order to purchase Mineral Water.

3)  "Party B" shall pay to "Party A" One Hundred Thousand Dollars (USD $100,000) as earnest contract money, and shall pay the remainder of One Million Eight Hundred Thousand Dollars (USD $1,800,000) by December 23, 2004.

4)  The contract term for "Party B" is 5 years; "Party B" must order more than $1,000,000 per year from 2 years after starting the business; and all payments to purchase Manitou Mineral Water must be made in advance.

5)  "Party B" shall place orders in writing approximately 3 months before delivery, and our price is US $1 per 1L bottle.

6)  "Party B" shall establish and operate a U.S. company in NY for smooth supply of the products and sales efforts.

7)  This contract shall be effective on the date "Party B" pays the remaining balance due in full; and "Party A" shall provide all materials about Manitou Mineral Water and shall cooperate upon call for assistance from "Party B".

8)  Any undocumented business matters shall be executed according to general commercial terms and conditions; both parties shall affix signatures below, make 2 copies of this contract, and each party shall keep one copy in its possession.

Manitou Mineral Water Inc.                     Journalists Federation of Korea
President, O Yoon Kwon                          Director, Young Gil Jee
Signed: O Yoon Kwon                             Signed: Young Gil Jee

# 계 약 서

매니토우 미네랄 워터 대표 권오윤(갑)과 한국언론인 연합회 본부장 지영길(을) 간 에 매니토우 스프링스 미네랄 워터의 원활 한 판매를 위하여 다음 사항을 합의 계약 함.

Menitou Mineral water

1) 갑은 을에게 매니토우 스프링스 미네랄 워터의 지정 판매권을 부여한다.

2) 판매권 이양 조건으로 을은 갑에게 금 100만불( US $ 1,000,000 )을 지급하 고, 미네랄 워터 대금 일백만 불 ( US $ 1,000,000 )을 선 지불키로 한다.

3) 을은 갑에게 계약금으로 일십만 불( US $ 100,000 )을 지급하고, 잔금 180 만불( US $ 1,800,000 )은 2004년 12월23일 까지 지불키로 한다.

4) 을의 계약기간은 5년으로 하고 사업개시 2년 뒤로부터 매년 일백만 불 이 상을 주문 발주 하여야 하고 매니토우 미네랄 워터의 물품대는 선금을 원칙 으로 한다.

5) 을은 물량 주문 시 통상 3개월 전에 문서로 주문 발주하여야 하며 출고 가격 은 1L 한 병 당 US $ / 로 정한다.

6) 을은 미네랄 워터의 원활한 판매와 매출 증대를 위하여 뉴욕에 법인 사무실 을 두고 운영토록 한다.

7) 을은 잔금 지불 시 본 계약의 효력이 발생하며 갑은 원활한 판매와 매출을 위하여 을의 요청 시 미네랄 워터에 관한 모든 자료를 제공하고 최국 협력한 다.

8) 명문화 되지 아니한 제반사항은 일반상거래에 따르며 후 일을 증 하여 본 계 약서를 2부 작성하여 서명 날인하여 보관한다.

**Manitou Mineral Water INC.**
**President**
권오윤

**Journalists Federation of Korea**
**Director**
지영길

Exh 2

# Exhibit 2

# CONTRACT

This contract has been agreed made between Young Gil Jee ("Party A"), director of Journalists Federation of Korea, and Hyun Song Kang ("Party B"), CEO of Hwa-Jin Group, in regards to sales of Manitou Springs Mineral Water.

Manitou Mineral Water

1) "Party A" hereby appoints "Party B" as the exclusive distributor for Manitou Springs Mineral Water.

2) "Party B" shall pay to "Party A", in advance, One Million Dollars (USD $1,000,000) in order to obtain distributorship, and shall pay additional One Million Dollars (USD $1,000,000), in advance, in order to purchase Manitou Mineral Water.

3) "Party B" shall pay to "Party A" One Hundred Thousand Dollars (USD $100,000) as earnest contract money, and shall pay the remainder of One Million Eight Hundred Thousand Dollars (USD $1,800,000) by December 23, 2004.

4) The contract term for "Party B" is 5 years; "Party B" must order more than $1,000,000 per year from 2 years after starting the business; and all payments to purchase Manitou Mineral Water must be made in advance.

5) "Party B" shall place orders in writing approximately 3 months before delivery, and our price is US $1 per 1L bottle.

6) "Party B" shall establish and operate a U.S. company in NY for smooth supply of the products and sales efforts.

7) This contract shall be effective on the date "Party B" pays the remaining balance due in full; and "Party A" shall provide all materials about Mineral Water and shall cooperate upon call for assistance from "Party B".

8) Any undocumented business matters shall be executed according to general commercial terms and conditions; both parties shall affix signatures below, make 2 copies of this contract, and each party shall keep one copy in its possession.

Journalists Federation of Korea                    Hwa-jin Group
Director, Young Gil Jee                             CEO, Hyun Song Kang
Signed: Young Gil Jee



# 계 약 서

한국언론인 연합회 본부장 지영길(갑)과 화진그룹 강현송 회장(을) 간에 매니토우 스프링스 미네랄 워터의 원활한 판매를 위하여 다음 사항을 합의 계약함.

Menitou Mineral water

1) 갑은 을에게 매니토우 스프링스 미네랄 워터의 지정 판매권을 부여한다.
2) 판매권 이양 조건으로 을은 갑에게 금 100만불( US $ 1,000,000 ) 을 지급하고, 미네랄 워터 대금 일백만 불 ( US $ 1,000,000 )을 선 지불키로 한다.
3) 을은 갑에게 계약금으로 일십만 불( US $ 100,000 ) 을 지급하고, 잔금 180 만불( US $ 1,800,000 )은 2004년 12월23일 까지 지불키로 한다.
4) 을의 계약기간은 5년으로 하고 사업개시 2년 뒤로부터 매년 일백만 불 이상을 주문 발주 하여야 하고 매니토우 미네랄 워터의 물품대는 선금을 원칙으로 한다.
5) 을은 물량 주문 시 통상 3개월 전에 문서로 주문 발주하여야 하며 출고 가격은 1ℓ 한 병 당 US $ / 로 정한다.
6) 을은 미네랄 워터의 원활한 판매와 매출 증대를 위하여 뉴욕에 법인 사무실을 두고 운영토록 한다.
7) 을은 잔금 지불 시 본 계약의 효력이 발생하며 갑은 원활한 판매와 매출을 위하여 을의 요청 시 미네랄 워터에 관한 모든 자료를 제공하고 적극 협력한다.
8) 명문화 되지 아니한 제반사항은 일반상거래에 따르며 후 일을 증 하여 본 계약서를 2부 작성하여 서명 날인하여 보관한다.

한국언론인연합회 본부장 지영길          화진그룹 회장 강현송

Exh 3

# Exhibit 3

## CONTRACT

This contract has been agreed made between O Yoon Kwon ("Party A"), president of Manitou Mineral Water, and Young Gil Jee ("Party B"), director of Journalists Federation of Korea, in regards to sales of Manitou Springs Mineral Water.

Manitou Mineral Water

1) "Party A" hereby appoints "Party B" as the exclusive distributor for Manitou Springs Mineral Water.

2) "Party B" shall pay to "Party A", in advance, Five Hundred Thousand Dollars (USD $500,000) in order to obtain distributorship, and shall pay additional One Million Dollars (USD $1,000,000), in advance, in order to purchase Mineral Water.

3) "Party B" shall pay to "Party A" One Hundred Thousand Dollars (USD $100,000) as earnest contract money, and shall pay the remainder of One Million Four Hundred Thousand Dollars (USD $1,400,000) by December 23, 2004.

4) The contract term for "Party B" is 5 years; "Party B" must order more than $1,000,000 per year from 2 years after starting the business; and all payments to purchase Manitou Mineral Water must be made in advance.

5) "Party B" shall place orders in writing approximately 3 months before delivery, and our price is US $1 per 1L bottle.

6) "Party B" shall establish and operate a U.S. company in NY for smooth supply of the products and sales efforts.

7) This contract shall be effective on the date "Party B" pays the remaining balance due in full; and "Party A" shall provide all materials about Manitou Mineral Water and shall cooperate upon call for assistance from "Party B".

8) Any undocumented business matters shall be executed according to general commercial terms and conditions; both parties shall affix signatures below, make 2 copies of this contract, and each party shall keep one copy in its possession.

Manitou Mineral Water Inc.                    Journalists Federation of Korea
President, O Yoon Kwon                         Director, Young Gil Jee
Signed: O Yoon Kwon                           Signed: Young Gil Jee

# 계 약 서

매니토우 미네랄 워터 대표 권오윤(갑)과 한국언론인 연합회 본부장 지영길(을) 간에 매니토우 스프링스 미네랄 워터의 원활 한 판매를 위하여 다음 사항을 합의 계약함.

Menitou Mineral water

1) 갑은 을에게 매니토우 스프링스 미네랄 워터의 지점 판매권을 부여한다.

2) 판매권 이양 조건으로 을은 갑에게 금 50만불( US $ 500,000 )을 지급하고, 미네랄 워터 대금 일백만 불 ( US $ 1,000,000 )을 선 지불키로 한다.

3) 을은 갑에게 계약금으로 일십만불( US $ 100,000 )을 지급하고, 잔금 140만불( US $ 1,400,000 )은 2004년 12월23일 까지 지불키로 한다.

4) 을의 계약기간은 5 년으로 하고 사업개시 2년 뒤로부터 매년 일백만 불 이상을 주문 발주 하여야 하고 매니토우 미네랄 워터의 물품대는 선금을 원칙으로 한다.

5) 을은 물량 주문 시 통상 3개월 전에 문서로 주문 발주하여야 하며 출고 가격은 1L 한 병 당 US $ / 로 정한다.

6) 을은 미네랄 워터의 원활한 판매와 매출 증대를 위하여 뉴욕에 법인 사무실을 두고 운영토록 한다.

7) 을은 잔금 지불 시 본 계약의 효력이 발생하며 갑은 원활한 판매와 매출을 위하여 을의 요청 시 미네랄 워터에 관한 모든 자료를 제공하고 적극 협력한다.

8) 명문화 되지 아니한 제반사항은 일반상거래에 따르며 후 일을 증 하여 본 계약서를 2부 작성하여 서명 날인하여 보관한다.

| | |
|---|---|
| **Manitou Mineral Water INC.**<br>**President**<br><br>권오윤 | **Journalists Federation of Korea**<br>**Director**<br><br>지영길 |

Exh 4

# Exhibit 4

## CONTRACT FOR SALE

Seller:    Young Gil Jee

Buyer:    Jung Hee Kim

Young Gil Jee, Seller, hereby agrees to sell Ho Myung America Inc.(subsidiary company in NJ, located at 460 Bergen Boulevard #307, Palisades Park, NJ 07650, USA) and all related business rights to Jung Hee Kim(654-85 Deung-chon-dong Hwa-jin Cosmetic Bldg 302, Kang-suh-ku, Seoul; CEO, Ho Myung Products Co., Ltd.), Buyer, for Two Million Dollars (US $2,000,000).

March 14, 2006

Seller
Ho Myung America Inc.
President, Young Gil Jee
"Seal"

Buyer
Ho Myung Products Co., Ltd.
CEO, Jung Hee Kim
"Seal"

# 권 리 양 도 서

매 도 인 : 지 영 길

매 수 인 : 김 정 희

매도인은 미국 뉴저지 소재 호명아메리카 (Ho Myung America Inc)

460 Bergen Boulevard #307, Palisades Park, N J. 07650. U.S.A

현지법인과 사업권 일체를 서울특별시 강서구 등촌동 654-85,

화진코스메틱빌딩 302호 (주)호명물산 대표이사 김정희에게

금이백만불(US$2,000,000)에 매매함.

### 2006 년 3 월 14 일

매도인
Ho Myung America Inc
대 표 : 지 영 길

매수인
(주) 호명물산
대표이사 : 김 정 희

[별지 제9-1호 서식]

<table>
<tr><td colspan="4" rowspan="2"></td><td colspan="2">해외직접투자신고(수리)서</td><td colspan="2">처리기간</td></tr>
<tr><td></td><td></td></tr>
</table>

| | | | | | |
|---|---|---|---|---|---|
| 신고인 | 상 호 | (주) 호 명 물 산 | 사업자등록번호 | 120-86-97449 | |
| | | | 법인등록번호 | 110111-2139426 | |
| | 대 표 자 | 김 정 희 | 주민등록번호 | 640916-2412361 | |
| | 소 재 지 | 서울 강서구 등촌동 664-16 | 전화번호 | 3661-8101 | |
| 해외직접투자내용 | 업 종 | 무역 | 소 재 지 | 460 Bergen Boulevard #307, Palisades Park, N.J. 07640 U.S.A | |
| | 투자국명 | 미국 | | | |
| | 투자방법 | 기명 | 주요제품 | 역느 선물 | |
| | 투자업종 | 무역 | 자금조달 | 자기자본 | |
| | 투자금액 | US.$200만+ | | | |
| | 투자목적 | 수영 다변화에 따른 가격경쟁력 | | | |
| | 투자비율 | 100 % | | | |
| | 현지법인명 (영 문) | HO MYUNG AMERICA INC | (자본금 US.$200만+) | | |

외국환은행장 귀하
외국환거래법 제18조의 규정에 의거 위와 같이 신고합니다

년    월    일.

신청인귀하
위의 신고를 다음 조건으로 수리합니다
1. 신고수리조건을 준수 할 것

2. 기 타

| | |
|---|---|
| 신고수리번호 | |
| 신고수리금액 | |
| 유 효 기 간 | |

년    월    일

은행장(인)

신고수리권자 :

210mm×297mm

<첨부서류> : 1. 투자개요서 또는 사업계획서(자금조달 및 운영계획 포함)
　　　　　　 2. 합작인 경우 당해 사업에 관한 계약서
　　　　　　 3. 외국환거래법 시행령 제7조제1항제4호에 규정한 금전의 대여에 의한 해외직접
　　　　　　　　투자인 경우에는 금전대차계약서(공증기관의 공증요)
　　　　　　 4. 기타 신고수리기관의 장이 요구하는 서류
　　　　　　 ※ 업종은 통계청 한국표준산업분류표상 세세분류코드(5자리) 및 업종명을 기재

# Exhibit 5

# CONTRACT FOR SALE

Seller:     Young Gil Jee
Buyer:      Jung Hee Kim

Young Gil Jee, Seller, hereby agrees to sell Ho Myung America Inc.(subsidiary company in NJ, located at 460 Bergen Boulevard #307, Palisades Park, NJ 07650, USA) and all related business rights to Jung Hee Kim(654-85 Deung-chon-dong Hwa-jin Cosmetic Bldg 302, Kang-suh-ku, Seoul; CEO, Ho Myung Products Co., Ltd.), Buyer, for One Million Six Hundred Thousand Dollars (US $1,600,000).

March 14, 2006

Seller                                          Buyer
Ho Myung America Inc.                           Ho Myung Products Co., Ltd.
President, Young Gil Jee                        CEO, Jung Hee Kim
"Seal"                                          "Seal"

# 매 매 계 약 서

매도인 : 지 영 길

매수인 : 김 정 희

매도인 지영길은 미국 뉴저지 소재 호명아메리카( Ho Myung America Inc : 460 Bergen Boulevard #307,Palisades Park, N j. 07650. U.S.A ) 현지법인과 사업권 일체를 매수인 ㈜호명물산 대표이사 김정희( 서울특별시 강서구 등촌동 654-85 화진5.5소메릭 빌딩 302호 )에게 금 일백 육십 만불(US $ 1,600,000)에 매매함.

2006년   3월   14일

매도인

Ho Myung America Inc

대       표 : 지 영 길



매수인

㈜ 호명물산

대표 이사 : 김 정 희

규정서식 제9-1호 서식

## 해외직접투자신고(수리)서

| | | | | | | 처리기간 | |
|---|---|---|---|---|---|---|---|

| 신고인 | 상 | 호 | (주)토명물산 | 사업자등록번호 | 120-86-17447 |
|---|---|---|---|---|---|
| | 대 표 자 | | 김정희 | 법인등록번호 | 110111-3138686 |
| | | | | 주민등록번호 | 540916-2812361 |
| | 소 재 지 | | 서울 강서구 등촌동 654-85 화건코스메틱빌딩 302호 | 전화번호 : 02-366-8101 | |
| | 업 종 | | 무역 | | |

| 해외직접투자내용 | 투 자 국 명 | 미국 | 소 재 지 | 460 Bergen Boulevard #307, Palisades Park, NJ. 01650. U.S.A |
|---|---|---|---|---|
| | 투 자 방 법 | 기업 | 주 요 제 품 | 없는 상품 |
| | 투 자 업 종 | 무역 | | |
| | 투 자 금 액 | U.S. $160만∼ | 자 금 조 달 | 자기 자본 |
| | 투 자 목 적 | 수입 다변화에 따른 가격 경쟁력 | | |
| | 투 자 비 율 | 100% | | |
| | 현 지 법 인 명 (영 문) | Ho MYUNG AMERICA INC | (자본금 : U.S. $160만∼) | |

재경부장관 귀하

(외국환은행의 장)

외국환거래법 제18조의 규정에 의거 위와 같이 신고합니다.

년 월 일

| 신청인 귀하 | | 신고수리번호 | |
|---|---|---|---|
| 위의 신고를 다음 조건으로 수리합니다. | | 신고수리금액 | |
| 1. 신고수리조건을 준수할 것 (별첨) | | 유 효 기 간 | |
| 2. 기타 | | | |

년 월 일

신고수리권자 : 재경부장관    (인)

210㎜×297㎜

〈첨부서류〉 1. 투자개요서 또는 사업계획서(자금조달 및 운영계획 포함)
　　　　　　2. 합작인 경우 당해 사업에 관한 계약서
　　　　　　3. 외국환거래법 시행령 제7조제1항제4호에 규정한 금전의 대여에 의한 해외직접투자인 경우에는
　　　　　　　금전대차계약서
　　　　　※ 업종은 통계청 한국표준산업분류표상 세세분류코드(5자리) 및 업종명을 기재

- 1 -

Exh 6

# Exhibit 6

Susana Gutierrez Manna, Esq.

# 𝔇𝔢𝔢𝔡

This Deed is made on MAY 17, 2005
**BETWEEN**
SURAJ P. BHATIA AND POONAM BHATIA, HIS WIFE

Consideration
Realty Transfer Fee
State Portion
County Portion
Municipality Portion

whose post office address is
31 COBBLESTONE CROSSING, NORWOOD, NJ 07648

69802          Deed > 35
Kathleen A. Donovan
Bergen County Clerk
Recorded 06/03/2005 1

referred to as the Grantor,
**AND**
YOUNG GIL JEE AND KYUNG SOOK SONG, HUSBAND AND WIFE

whose post office address is
ABOUT TO BE 31 COBBLESTONE CROSSING, NORWOOD, NJ 07648

referred to as the Grantee.
The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

1. **Transfer of Ownership.**    The Grantor grants and conveys (transfers ownership of) the property
"Property") described below to the Grantee.  This transfer is made for the sum of
EIGHT HUNDRED SIXTY THOUSAND DOLLARS AND NO CENTS ($860,000.00)
The Grantor acknowledges receipt of this money.

2. **Tax Map Reference.**    (N.J.S.A. 46:15-1.1) Municipality of NORWOOD
Block No. 98.01          Lot No. 2          Qualifier No. ———          Account No.
☐ No property tax identification number is available on the date of this Deed.  (Check Box if Applicable

3. **Property.**    The Property consists of the land and all the buildings and structures on the land in
the BOROUGH                    of NORWOOD
County of BERGEN                    and State of New Jersey.  The legal description is:

    ☒ Please see attached Legal Description annexed hereto and made a part hereof. (Check Box if Applic:

BEING THE SAME PREMISES CONVEYED TO GRANTORS HEREIN BY DEED FROM ADAMO HOMI
APRIL 3, 1981, RECORDED APRIL 3, 1981, IN THE CLERK'S OFFICE OF THE COUNTY OF BERGEN
JERSEY, IN BOOK 6623, PAGE 423.

The street address of the Property is:
31 COBBLESTONE CROSSING, NORWOOD, NJ  07648

**4. Promises by Grantor.**    The Grantor promises that the Grantor has done no act to encumber the Property.  This promise is called a "covenant as to grantor's acts" (N.J.S.A.  46:4-6).  This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the Property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**5. Signatures.**    The Grantor signs this Deed as of the date at the top of the first page.  (Print name below each signature.)

Witnessed By:

_____          _____ (Seal)
                                             SURAJ P. BHATIA

_____          _____ (Seal)
SUSANA GUTIERREZ MANNA, ESQ.                 POONAM BHATIA

                                           _____ (Seal)


STATE OF NEW JERSEY, COUNTY OF BERGEN                                    SS.
I CERTIFY that on MAY 17, 2005
SURAJ P. BHATIA AND POONAM BHATIA, HUSBAND AND WIFE

personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of this Deed;
(b) executed this Deed as his or her own act; and,

(c) made this Deed for $ 860,000.00                    as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A.  46:15-5.)

| RECORD AND RETURN TO: |
| SHARON HONG, ESQ. |
| SON & HONG, ESQS. |
| 344 BROAD AVENUE, SUITE 201 |
| PALISADES PARK, NJ  07650 |

_____
(Print name and title below signature)
SUSANA GUTIERREZ MANNA, ESQ.
ATTORNEY AT LAW
STATE OF NEW JERSEY

©1996 by ALL-STATE Legal
A Division of ALL-STATE® International, Inc.
(908) 272-0800                    Page 2

GIT/REP-3
(7-04)



**State of New Jersey**
**SELLER'S RESIDENCY CERTIFICATION/EXEMPTION**
(C.55, P.L. 2004)

(Please Print or Type)

## SELLER(S) INFORMATION (If Multiple Sellers, Each Seller Must Complete a Certification)

Name(s)
Suraj P. Bhatia & Poonam Bhatia, H/W

Current Resident Address:

Street: 31 Cobblestone Crossing

| City, Town, Post Office | State | Zip Code |
|---|---|---|
| Norwood | NJ | 07648 |

Home Phone
(        )

Business Phone
(        )

## PROPERTY INFORMATION (Brief Property Description)

| Block(s) | Lot(s) | Qualifier |
|---|---|---|
| 98.01 | 2 | |

Street Address:
31 Cobblestone Crossing

| City, Town, Post Office | State | Zip Code |
|---|---|---|
| Norwood | NJ | 07648 |

| Seller's Percentage of Ownership | Consideration | Closing Date |
|---|---|---|
| 100% | # 860,000.00 | 5-17-05 |

## SELLER ASSURANCES (Check the Appropriate Box)

1. ☒ I am a resident taxpayer of the State of New Jersey pursuant to N.J.S.A. 54A:1-1 et seq. and will file a resident gross income tax return and pay any applicable taxes on any gain or income from the disposition of this property.

2. ☒ The real property being sold or transferred is used exclusively as my principal residence within the meaning of section 121 of the federal Internal Revenue Code of 1986, 26 U.S.C. s. 121.

3. ☐ I am a mortgagor conveying the mortgaged property to a mortgagee in foreclosure or in a transfer in lieu of foreclosure with no additional consideration.

4. ☐ Seller, transferor or transferee is an agency or authority of the United States of America, an agency or authority of the State of New Jersey, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or a private mortgage insurance company.

5. ☐ Seller is not individual, estate or trust and as such not required to make an estimated payment pursuant to N.J.S.A. 54A:1-1 et seq.

6. ☐ The total consideration for the property is $1,000 or less and as such, the seller is not required to make an estimated payment pursuant to N.J.S.A. 54A:5-1-1 et seq.

## SELLER(S) DECLARATION

The undersigned understands that this declaration and its contents may be disclosed or provided to the New Jersey Division of Taxation and that any false statement contained herein could be punished by fine, imprisonment, or both. I furthermore declare that I have examined this declaration and, to the best of my knowledge and belief, it is true, correct and complete.

| | |
|---|---|
| 5-17-05 | S P. Bhatia |
| Date | Suraj P. Bhatia   Signature (Seller) Please indicate if Power of Attorney or Attorney in Fact |
| 5-17-05 | Poonam Bhatia |
| Date | Poonam Bhatia   Signature (Seller) Please indicate if Power of Attorney or Attorney in Fact |

ABSTRACTED

ORT-6238

## REVISED LEGAL DESCRIPTION

ALL that certain lot, parcel or tract of land, situate and lying in the Borough of Norwood, County of Bergen, State of New Jersey, and being more particularly described as follows:

KNOWN and designated as Lot 2 in Block 98A as sown and laid out on a certain map entitled "Final Subdivision Plat, NORTH WOODS, Section I, in the Borough of Norwood, Bergen County, New Jersey, for Adamo Homes, Inc.," prepared by Conklin Associates, Engineers & Surveyors, dated March, 1980, revised to May 16, 1980, and filed in the Office of the Bergen County Clerk on November 13, 1980, as Filed Map No. 7901.

BEGINNING at a point of curve in the northeasterly line of Cobblestone Crossing distant 192.83 feet southwest of the intersection formed by the northeasterly line of Cobblestone Crossing and the southwesterly line of Jenni Lane if produced, thence

(1)   Along a curve to the right of radius 150.00 feet and arc length 92.81 feet to a point, thence

(2)   South 86 degrees 26 minutes 03 seconds West along the northeasterly line of Cobblestone Crossing a distance of 122.22 feet to a point, thence

(3)   North 17 degrees 05 minutes 21 seconds East, a distance of 137.20 feet to a point, thence

(4)   North 25 degrees 38 minutes 27 seconds East, a distance of 80.41 feet to a point, thence

(5)   South 39 degrees 00 minutes 56 seconds East, a distance of 209.63 feet to the point and place of BEGINNING.

The above description being drawn in accordance with a survey prepared by Daniel D. Kingcaid, PLS & PP dated April 17, 2004.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 2 in Block 98.01 on the Borough of Norwood Tax Map.