UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL S. KIMM, ESQ.
190 MOORE STREET, SUITE 272
HACKENSACK, NEW JERSEY 07601
TEL: 201-342-3377
FAX: 201-342-0555
*Attorney for Plaintiffs*

| | |
|---|---|
| HO MYUNG MOOLSAN CO., LTD., and HYUN-SONG KANG, <br><br>Plaintiffs,<br><br>v.<br><br>MANITOU MINERAL WATER, INC., RAPHAEL DRUG AND HEALTH CO. O-YOON KWON; NAM-IN JHON, HANMI HOME SHOPPING COMPANY, NEW JERSEY FLEA MARKET NEWS, NEW YORK FLEA MARKET NEWS, a/k/a WWW.FINDALLUSA.COM, JOHN DOES 1 THROUGH 10, JANE DOES 1 THROUGH 10, and ABC COMPANIES 1 THROUGH 100,<br><br>Defendants. | 07 CV 7483 (RJH)<br><br><br><br><br><br><br><br><br><br>**Reply declaration of Jeong Hee Kim in further support of preliminary injunction** |

JEONG HEE KIM, of age, declares under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am president of plaintiff Ho Myung Moolsan Company, Limited, based in Korea, and I make this reply declaration in further support of plaintiffs' application for preliminary injunction, as set forth in the Order to show cause previously filed with the Court.

1

2. I have reviewed the opposing affidavit of defendants' witnesses including, principally, the affidavit of defendant O Yoon Kwon. I will respond to the material statements asserted on defendants' behalf in turn.

### RESPONSE TO DEFENDANTS' STATEMENTS

#### No dispute as to balance of hardships

3. I will first observe that defendants have made no claim and presented no facts that suggest that they will suffer any harm at all if our application is granted. In contrast, as we have already discussed in our initial papers, plaintiffs have been suffering, and will continue to suffer, a total destruction of their business goodwill built upon defendants' inducements, if the status quo is not maintained. The "status quo" that should be maintained is plaintiffs' exclusive right to sell Manitou mineral water in the U.S. and Korea where Ho Myung already commenced business operations and where defendants had no real business activity before Ho Myung's market-entry.

#### So-called "pre-existing sales activity"

4. Defendant Kwon's substantive assertions of "fact" are set forth at paragraphs 3 and forward. In paragraph 3, defendant Kwon states that, since 2003 Manitou mineral water had been sold in Japan, Mexico and the United States, and that defendants sought to distribute in South Korea also. While that may or may not have been true <u>before</u> plaintiffs' entry in the business, that claim is demonstrably false <u>after</u> plaintiffs' entry, which was specifically induced by defendants. Defendant Kwon induced plaintiffs to invest in the Manitou water

business by promising that, if plaintiffs pursued an organized marketing effort, his pre-existing sales (at parts of Mexico, Los Angeles, and other cities of the U.S.) activity would be terminated. He requested an advance payment of water bills that would more than cover the termination of his "pre-existing market."

    5. On September 30, 2005, a full year after plaintiffs allocated $2 million to Young Gil Jee — of which defendants admit receiving their contract price of $1.5 million — defendant Kwon met with me and several of plaintiffs' employees in Korea at Lotte Hotel in downtown Seoul. We met at defendant Kwon's own hotel suite, where he provided us with his own hand-written notes which state the following in two separate pages:

\* \* \*

    Annexed hereto as Dear Chairman Kang Hyun Song
    In connection with your cooperative business, I write to provide the following update:

    1.    A. I am sending a written copy of contract.
            B. There are no other financial or miscellaneous circumstances.

    2.    A. One copy of contract being provided.
            B. At the time of wire transfer of funds from Korea, I assisted with documentation (but did not keep copy of such documents)
            C. I also helped with visa application and cooperated with visa lawyer (but did not keep copy of such documents)

                      9-30-05    Submitted by Kwon, O Yoon

\* \* \*

    3. Progress notes:        (Contract money paid $100,000 9,24,04
                                    plus $1.4 million around 3-25-05)

> Contract money $100,000 was received (Sept 24, 04)
>
> As requested by Jee Young Gil, business was stopped in Mexico, LA, New York, Philadelphia, and other areas of America, and factory operations have been discontinued. Also, the products that had been placed for sale in the market have been repurchased, and your [commencement of] business in Korea and U.S. is being anticipated. There has been no sales activity, and in the future there will be no business activity with Jee Young Gil. As for the contract that arose in the United States, [I intend to] seek court ruling on that issue. I will keep in touch with further developments in this matter.

<u>Exhibit 1.</u>

6. Defendant Kwon signed the first page, at the bottom, rather than on the second page, stating that because the second page had "run out of space," he would place his name on the first page. As is clearly shown in defendant Kwon's own notes, by September 2005, he confirmed that he had terminated all of his then-existing sales of Manitou spring water — which he identified as being "Mexico and parts of the United States." Defendant Kwon did not mention any "Japan" distributor or anywhere else, including "South Korea," and, as was specifically stated in his own hand-written notes, he represented that he would enable plaintiffs to cultivate the Korea and U.S. markets.

7. The discussion about giving plaintiffs a "clean slate" had been ongoing since the outset of our relationship with defendant Kwon but defendant Kwon repeatedly assured us verbally. By September 2005, a year after plaintiffs spent almost $3 million to establish a real network of Manitou water business in the U.S. and Korea, with the specific discussion and expectation that plaintiffs would have "exclusive global rights," when plaintiffs sought verification that there was no pre-existing sales activity to conflict with plaintiffs' organized

sales and marketing launch, defendant Kwon provided the two-pages of notes to confirm that he had arranged for the "recall" and "termination" all of the pre-existing business activity generated by him, and that he would now yield to plaintiffs' launch. Later, in approximately late 2005, defendant Kwon advised us that those tasks had been completed.

### As to "separate and independent" defendants

8. In paragraph 6 of his affidavit, defendant Kwon asserts that his pharmacy is a separate business and it should not be joined in this lawsuit. Defendant Kwon's pharmacy should be joined in this lawsuit for several reasons.

First, when he induced plaintiffs to invest, he stated that he owned the building in which his pharmacy is housed, 1257 Broadway; that he owned another commercial building one block away known as 25 West 32nd Street, which is a large commercial and office building; and that he owns a large estate in the Hamptons of Long Island.

Second, defendant Kwon advised plaintiffs that Manitou Mineral Water, Inc., was a corporation registered in New York, at 1257 Broadway, and that it was being operated in conjunction with his pharmacy business; and we believe, based upon information obtained since the filing of this lawsuit, that Manitou Mineral Water, Inc., is in fact a company formed in Colorado.

Third, defendant Raphael Pharmacy has been selling plaintiffs' brand and plaintiffs' lots of water at its business location, so that, quite apart from the contract-license issue, defendants have engaged in trademark infringement and unfair competition by selling

our water, without disclosure and permission, in our territory.

**The Contract price and Exclusivity**

9. In paragraphs 8 through 24, defendant Kwon spends a significant amount of effort on the subject of the "Contract price." He asserts that, based on our New Jersey lawsuit against Young Gil Jee, alleging that Jee had forged my name on one of the documents, that somehow the document itself was a forgery as to his signature as well. The facts are different. The two versions of one-page "Contract" annexed to the Young Gil Jee lawsuit were signed by defendant Kwon, according to him, back in 2004, when he and Young Gil Jee were engaged in the spring water transaction, which was funded by plaintiffs. By mid-2005, when plaintiffs were not receiving adequate information from Young Gil Jee as to the progress of the business which was funded in fall 2004, we insisted upon meeting with defendant Kwon directly and ultimately confirmed from him, at the September 30, 2005, meeting where he provided two pages of hand-notes, that he had received $1.5 million.

10. Defendant Kwon had never before disavowed the $2 million "Contract" as being a forged signature of his, but based on my familiarity with defendant Kwon's signature, which is unique, it does not appear to be a forgery. Defendant Kwon's assertion of "forgery" does not assist his defense because, we (plaintiffs) and he ultimately made a confirmation agreement — the one-page "Contract" that he claims to be in effect — was signed on December 1, 2005. This document was made at defendant Kwon's own hotel suite in Korea, using his computer, and it was edited at his instruction by Young Gil Jee. (By this time,

unknown to us, defendant Jee had benefitted from defendant Kwon's dealings with him.) Defendant Jee took instructions from defendant Kwon and the two purported to "edit" parts of the earlier-version of the one-page "Contract" to provide that global sales would be discussed within 6 months.

11. Even Young Gil Jee's "Abandon Memorandum" attached to defendants' Exhibit D (<u>Exhibit 2</u> here) states that the rights were "exclusive." Although that document was improperly translated, as annexed hereto, there is a two-letter word write in Korean which is transliterated as "chong-pan." Here, the "chong" means total or exclusive and "pan" means "sales" so that Young Gil Jee's "abandonment" was to surrender an exclusive agreement made with defendant Kwon.

12. Defendant claims that none of the documents say "exclusive" — but this is false. And interestingly, I do not find in any of defendants' numerous assertions where he denies telling us, plaintiffs, that we were being induced to purchase the exclusive rights.

**<u>Defendants' claim of being "ready, willing and able" to ship water</u>**

13. In paragraphs 24 through 39, defendant Kwon claims that the defendants were somehow "ready, willing and able" to continue the "flow" of water shipments that ended in April, but, in the same breath claims that his production encountered difficulties outlined in the Jhon letter of January 2007, attached to my moving declaration (moving Exhibit 5). The suggestion that plaintiffs filed this lawsuit while the water was "flowing" is totally false and dishonest. This methodology underlies defendant Kwon basic dealings with plaintiffs —

7

lack of candor and honor. Defendants were not ready, they were not able, and they were not able to ship water, in part because they shipped our water, with our labels, with our Ho Myung trademark, to third-parties, without disclosure and permission from us.

14. Defendant Kwon's claim that, by a letter dated August 29, 2007, he tried to advise that our production would somehow "resume," but this is also in bad faith because that letter came in response to the lawsuit papers plaintiffs' lawyer, Michael Kimm, served upon the defendants. Thus, Michael Kimm responded to this letter the very next day, <u>Exhibit 3</u>, and there was no response from defendants thereafter.

15. In the remaining parts of his affidavit, defendant Kwon states that Hanmi Home Shopping was his personal friend who was merely helping him promote the water sale, and that he had been provided with only "five boxes" of water which belonged to plaintiffs, and that no "commercial relationship" existed between the co-defendants. Defendant Kwon claims that any use of plaintiffs' trademarks was somehow a "mistake." At this juncture, until those facts are further developed by our counsel, we maintain that all of the named defendants are properly joined in this lawsuit.

16. In sum, the following key points can be summarized from defendants' statements and from the facts before the Court on the record.

    A. Defendants have stated that they received the "Contract" price of $1.5 million, which included $1 million advance payment for 1 million bottles of water.

    B. Plaintiff has spent approximately $3 million to develop the business and

establish plaintiffs' business goodwill in the market place.

  C.  Plaintiffs were provided with the U.S. and Korea rights at the outset, and defendants were to have extended the rights to "global" rights within 6 months of September 2005, which was March 2006.

  D.  Plaintiffs maintain that the rights were "exclusive" as is discussed in plaintiffs' submissions and as is reflected in the Young Gil Jee "Abandonment Memorandum" provided to defendants.  Defendants claim that the one-page Contract forms do not say "exclusive" but they do not deny that discussing that issue.

  E.  Defendants concede, as stated in the September 30, 2005, hand written notes of defendant Kwon that they cleared the pre-existing sales network in Mexico, Los Angeles and other places, so as to provide a clean market for plaintiffs.  Defendants do not dispute that plaintiffs established a significant market.

  F.  Defendants admit that they failed to supply water since April 2, 2007. Defendants state that they failed to fill at least eight containers requested in May 2007 and they failed to ship further containers which became due in June, July, August, September and October 2007.  Defendants' failure to ship is ongoing.  Plaintiffs never refused any shipment.

  G.  Defendants admit that they engaged in sales and advertising of water sales (using plaintiff's brand, bottle and plaintiffs' water supply) to third-parties and through third-parties during the time they failed to ship any water to plaintiffs.

  H.  Defendants concede that plaintiffs established a sales network in Korea

using plaintiffs' related company, Hwa Jin Cosmetics' 70,000 salesperson network.

17.   Due to the severity of reputational harm caused by defendants, plaintiffs's business goodwill will be salvaged only with (1) a preliminary injunction prohibiting defendants from selling to any third-party while supplying plaintiffs' water supply for sales exclusively globally with (2) an assurance that the supply will not be disrupted during the term of plaintiffs' contract.

18.   Defendants do not claim anywhere in their papers that their own business will somehow "suffer" any "harm" at all, if they are compelled by this Court to comply with the terms of the bargain they struck with plaintiffs — to supply water to plaintiffs exclusively in the United States and Korea initially and to the rest of the world within six months of September 2005.

Dated: October 8, 2007                          /s/ Jeong Hee Kim
                                                President
                                                Ho Myung Moolsan Co., Ltd.

Certificate of Service

Michael S. Kimm, Esq., certifies the foregoing was served upon defendants' counsel by fax and mail.

>Andrew Kimler, Esq.
>Capell Vishnick, LLP
>3000 Marcus Avenue, Suite 1E9
>Lake Success, NY 11042
>Fax 516-437-4395

Dated: October 10, 2007                          /s/ Michael S. Kimm, Esq.