UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

HO MYUNG MOOLSAN CO., LTD. AND       :
HYUN-SONG KANG,
                                     :
                    Plaintiffs,      :      07 Civ. 7483 (RJH)(HBP)
                                     :
      -against-
                                     :      OPINION
MANITOU MINERAL WATER, INC.,                AND ORDER
O-YOON KWON, RAPHAEL DRUG AND        :
HEALTH CO., INC., HANMI HOME
SHOPPING CO., NEW JERSEY FLEA        :
MARKET NEWS AND NEW YORK FLEA
MARKET NEWS,                         :

                    Defendants.      :

----------------------------------X

          PITMAN, United States Magistrate Judge:


I.  Introduction

          By notice of motion dated December 12, 2008, (Docket

Item 64), plaintiffs move for leave to file an amended complaint.

The proposed amended complaint would add the following claims

against all defendants: (1) fraud in the inducement, (2)tortious

interference with both contract and business relationships, (3)

conspiracy to commit conversion, (4) conspiracy to commit theft

of corporate funds, (5) conspiracy to commit breach of fiduciary

duty, (6) conspiracy to commit misrepresentation, (7) violations

of the Racketeer Influenced Corrupt Organization Act, ("RICO"),

18 U.S.C. § 1962(a)-(d), and (8) conspiracy to commit RICO

violations.  By notice of motion dated February 9, 2009, (Docket

Item 79), defendants move for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

For the reasons set forth below, plaintiffs' motion is granted in part and denied in part, and defendants' motion is denied.

## II.  Facts

In principal part, this is an action for breach of contract and trademark infringement.  Plaintiffs allege that defendants breached a contract to sell bottled mineral water to plaintiffs by selling the water to other distributors instead of plaintiffs under trademark allegedly owned by plaintiffs (Pro-posed Amended Complaint, ("Am. Compl."), ¶¶ 38-50).

In June 2004, plaintiff Hyun-Song Kang, the sole shareholder of plaintiff Ho Myung Moolsan Co. ("Moolsan"), was introduced to defendant O Yoon Kwon, the President of Manitou Springs Mineral Water, Inc. ("Manitou Springs") by Kang's "agent and confidant," Young Gil Jee (Am. Compl. ¶12).  Jee "repre-sented" to Kang that he would enter into a contract with Manitou Springs for exclusive distribution of Manitou Springs Mineral Water and that this contract would be "for [the] benefit" of Moolsan (Am. Compl. ¶15).

In December 2004, Jee, as Director of the Journalists Federation of Korea,[1] and Kwon, as President of Manitou Springs executed a contact under which Jee was to pay $500,000 for exclusive distributorship of Manitou Springs Mineral Water and $1,000,000 in advance for purchase of the mineral water (Am. Compl. ¶ 21 and Ex. 3). Jee, however, produced a different contract to Kang. This contract was also signed by Jee and Kwon, but provided that Jee was to pay $1,000,000 for the exclusive distributorship and $1,000,000 for advance purchase of the mineral water (Am. Compl. ¶ 15 and Ex. 1). Moolsan paid the $2,000,000 due under this contract to Manitou Springs (Am. Compl. ¶¶ 19, 24).[2] Plaintiffs allege that the additional $500,000 charged under the contract was used to compensate Jee for "funneling" business to Manitou Springs (Am. Compl. ¶ 21).

Approximately one year after the contract was executed, Kwon told Moolsan's president, Jeong Hee Kim, that Manitou

---

[1]Plaintiffs do not provide any information about the Journalists Federation of Korea, nor do they explain why Jee signed the contract as its Director.

[2]Nowhere in their Amended Complaint do plaintiffs specify when or how the rights of the Journalists Federation of Korea under the contract were assigned to Moolsan. However, both parties acknowledge that Moolsan made payments to Manitou Springs and that Manitou Springs sold water to Moolsan pursuant to an agreement entered into by Manitou Springs and the Journalists Federation of Korea. (Am. Compl. ¶¶ 24, 26; Memorandum of Law in Opposition to Motion for Leave to File an Amended Complaint, dated Jan. 16, 2009 (Docket Item 75), ("Defs.' Mem. in Opp."), at 3).

Springs had only received $1,500,000 under the contract (Am. Compl. ¶ 23).  Kwon also told Kim that his signature on the contract for $2,000,000 had been forged (Am. Compl. ¶ 17).  At this point, Manitou Springs entered into a contract for the sale of water directly with Moolsan (Am. Compl. ¶ 23).[3]

In April 2007, Manitou Springs stopped shipping water to Moolsan (Am. Compl. ¶ 27).  In addition, plaintiffs allege that Manitou Springs began selling spring water to third parties and "facilitated" the use of Moolsan's logo and advertisements by those third parties (Am. Compl. ¶¶ 32-35).

Plaintiffs' original complaint asserted claims for (1) a declaratory judgment, (2) breach of contract, (3) unfair competition under the Lanham Act, (4) palming off of property rights, (5) tortious interference with contract, (6) fraud, and (7) conspiracy.  The original complaint named Manitou Springs and Kwon as defendants, as well as the manager of Manitou Springs' factory, another business operated by Kwon and three entities that allegedly sold Manitou Springs Mineral Water after plaintiffs had obtained exclusive rights to do so.

On December 20, 2007, the Honorable Richard J. Holwell, United States District Judge, dismissed plaintiffs' claims for declaratory judgment and breach of contract as to all defendants

---

[3]Although plaintiffs designate this contract as Exhibit 4 in their Amended Complaint (Am. Compl. ¶ 27) it is not attached.

other than Manitou Springs, and dismissed plaintiffs' claims for tortious interference, fraud, and conspiracy as to all defendants (Order dated Dec. 20, 2007 (Docket Item 37)).

Plaintiffs now seek to amend their complaint to re-plead claims for fraud, tortious interference, and conspiracy and to include new claims for substantive violations of RICO and conspiracy to violate RICO. Plaintiffs seek to bring these claims against all defendants named in the original complaint other than the factory manager of Manitou Springs. In addition, plaintiffs apparently seek to replead their breach of contract claim against all defendants. Defendants oppose amendment on the grounds that the proposed amendments are futile and will result in undue delay and prejudice. Defendants also move for sanctions pursuant to Fed.R.Civ.P. 11 arguing that the motion to amend is so deficient that it is sanctionable.

III. Analysis

    A. Motion to Amend

          1. Standards Applicable
             to a Motion to Amend

The standards applicable to a motion to amend a pleading are well settled and require only brief review. Leave to amend a pleading should be freely granted when justice so requires. Fed.R.Civ.P. 15(a); Foman v. Davis, 371 U.S. 178, 182

(1962); McCarthy v. Dunn & Bradstreet Corp., 482 F.3d 184, 200
(2d Cir. 2007); Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404
F.3d 566, 603-04 (2d Cir. 2005); Dluhos v. Floating & Abandoned
Vessel, Known as "New York", 162 F.3d 63, 69 (2d Cir. 1998);
Gumer v. Shearson, Hamill & Co., 516 F.2d 283, 287 (2d Cir.
1974); Aniero Concrete Co. v. New York City Constr. Auth., 94
Civ. 9111 (CSH), 1998 WL 148324 at *7 (S.D.N.Y. Mar. 30, 1998)
(Haight, J.), aff'd sub nom., Aetna Cas. & Sur. Co. v. Aniero
Concrete Co., 404 F.3d 566 (2d Cir. 2005).  "Nonetheless, the
Court may deny leave if the amendment (1) has been delayed
unduly, (2) is sought for dilatory purposes or is made in bad
faith, (3) the opposing party would be prejudiced, or (4) would
be futile." Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303
(S.D.N.Y. 1996) (Kaplan, J.), aff'd, 116 F.3d 465 (2d Cir. 1997);
see McCarthy v. Dunn & Bradstreet Corp., supra, 482 F.3d at 200;
Ellis v. Chao, 336 F.3d 114, 126-27 (2d Cir. 2003); Montefiore
Med. Ctr. v. Am. Prot. Ins. Co., 00 Civ. 3235 (LTS), 2003 WL
21108261 at *1 (S.D.N.Y. May 14, 2003) (Swain, J.); Am. Home
Assurance Co. v. Jacky Maeder (Hong Kong) Ltd., 969 F. Supp. 184,
187-88 (S.D.N.Y. 1997) (Kaplan, J.).

a. Futility

A proposed amended complaint is futile when it fails to
state a claim.  Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d

Cir. 1990); Mina Inv. Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245,
257 (S.D.N.Y. 1999) (Sweet, J.); Parker v. Sony Pictures Entm't,
Inc., 19 F. Supp. 2d 141, 156 (S.D.N.Y. 1998) (Kaplan, J.), aff'd
in pertinent part, vacated in part on other grounds sub nom.,
Parker v. Columbia Pictures Indus., 204 F.3d 326 (2d Cir. 2000);
Yaba v. Cadwalader, Wickersham & Taft, 931 F. Supp. 271, 274
(S.D.N.Y. 1996) (Koeltl, J.); Prudential Ins. Co. v. BMC Indus.,
Inc., 655 F. Supp. 710, 711 (S.D.N.Y. 1987) (Sweet, J.); see
generally Dluhos v. Floating & Abandoned Vessel known as "New
York", supra, 162 F.3d at 69-70.  The party opposing the amend-
ment has the burden of demonstrating that leave to amend would be
futile.  Staskowski v. County of Nassau, 05 Civ. 5984 (SJF)(WDW),
2007 WL 4198341 at *4 (E.D.N.Y. Nov. 21, 2007)("It is axiomatic
that the party opposing an amendment has the burden of establish-
ing that leave to amend would be futile."); Lugosch v. Congel,
00-CV-784, 2002 WL 1001003 at *1 (N.D.N.Y. May 14, 2002); citing
Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134, 137-38
(E.D.N.Y. 1998).

  Leave to amend may be denied as futile "where the claim
or defense proposed to be added has 'no colorable merit'".
Oliver v. Demarinis & Co., 90 Civ. 7950 (SS), 1993 WL 33421 at *2
(S.D.N.Y. Jan. 29, 1993) (Sotomayor, D.J.) (citation omitted);
see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodi-
ties, Inc., 748 F.2d 774, 783 (2d Cir. 1984) (if the movant has

"colorable grounds for relief," justice requires that leave to amend be granted).  The "colorable grounds requirement mandates that a district court may not deny a motion for leave to amend a pleading when said pleading is sufficient to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Children First Found. Inc. v. Martinez, 04 Civ. 0927 (NPM), 2007 WL 4618524 at *5 (N.D.N.Y. Dec. 27, 2007), citing Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 244 (2d Cir. 2007); Estate of Ratcliffe v. Pradera Realty Co., 05 Civ. 10272 (JFK), 2007 WL 3084977 at *4 (S.D.N.Y. Oct. 19, 2007) (Keenan, J.); Journal Publ'g Co. v. Am. Home Assur. Co., 771 F. Supp. 632, 635 (S.D.N.Y. 1991) (Leisure, J.); Prudential Ins. Co. v. BMC Indus., Inc., supra, 655 F. Supp. at 711 (Although leave to amend should be freely given, "it is inappropriate to grant leave when the amendment would not survive a motion to dismiss.").

Therefore, an amendment to a complaint may be denied as futile if a defendant can show that there are no "set of facts consistent with the allegations in the complaint" which would entitle plaintiff to relief.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).  To survive a motion to dismiss, plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  Bell Atlantic Corp. v. Twombly, supra, 550 U.S. at 555 (overruling the language of

8

Conley v. Gibson, 355 U.S. 41, 45-46 (1957) that a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); see also Oliver Schools, Inc. v. Foley, 930 F.2d 248, 252 (2d Cir. 1991) (discussing the standard for denying an amendment as futile prior to Bell Atlantic); Blaskiewicz v. County of Suffolk, supra, 29 F. Supp. 2d at 138 (same).

The Court of Appeals has also repeatedly noted that the trial court has "broad" discretion in ruling on a motion to amend. Local 802, Associated Musicians v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998); Krumme v. Westpoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998); see generally Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000).

       i. Claims against Defendants Raphael
         Drug and Health Co., Hanmi Home
         Shopping Co., New Jersey Flea Market
         <u>News and New York Flea Market News</u>[4]

Although plaintiffs include Raphael Drug and Health
Co., Hanmi Home Shopping Co., New Jersey Flea Market News and New
York Flea Market News ("the Distributor Defendants") as defen-
dants in their proposed Amended Complaint, they do not clearly
identify the claims asserted against them.  Rather, all of
plaintiffs' proposed claims are broadly alleged against "defen-
dants" or "defendants, or some of them."  Presumably then,
plaintiffs seek to assert all claims in their Amended Complaint
against all defendants.  However, the only specific allegations
with regard to the Distributor Defendants are that (1) Raphael
Drug and Health Co. had the same telephone and fax number as
Manitou Springs, (2) Manitou Springs shipped water to Raphael
Drug and Health Co. (Am. Compl. ¶¶ 5, 35) and that (3) Hanmi Home
Shopping Co., New Jersey Flea Market News, and New York Flea

---

[4]In their motion papers, both parties assert that plaintiffs
are seeking to add additional parties (Memorandum of Law in
Support of Motion to Amend Complaint, dated Dec. 15, 2008 (Docket
Item 65), ("Pls.' Mem. in Support"), at 2; Defs.' Mem. in Opp. at
21).  However, all parties named in the proposed amended
complaint were also named in the original complaint; Judge
Holwell dismissed only five of plaintiffs' seven causes of action
against these defendants.  There is no other indication in the
record that the remaining two causes of action were dismissed
against these defendants.  Therefore, I analyze plaintiffs'
motion under the standards applicable to a motion to amend under
Fed.R.Civ.P. 15(a) rather a motion for joinder of additional
defendants under Fed.R.Civ.P. 20.

Market News sold Manitou Springs Mineral Water using advertising "virtually identical to plaintiffs' advertising and promotional materials." (Am. Compl. ¶¶ 6-8).  There are no facts in the proposed amended complaint connecting the Distributor Defendants with the plaintiffs' re-alleged or newly stated claims for fraud in the inducement, breach of contract, tortious interference, RICO violations or conspiracy to commit conversion, theft of corporate funds, breach of fiduciary duty or misrepresentation.

When a complaint names defendants in the caption but makes no substantive allegations against them in the body of the pleading, the complaint does not state a claim against these defendants.  Sharp v. State of New York, 06 Civ. 5194 (JFB)(ETB), 2007 WL 2480428 at *5 (E.D.N.Y. Aug. 28, 2007); Vaval v. Zenk, 04 Civ. 4548 (CBA), 2007 WL 778429 at *5 (E.D.N.Y. Mar. 13, 2007); United States ex rel. Eisenstein v. City of New York, 03 Civ. 413 (DAB), 2006 WL 846376 at *2 (S.D.N.Y. Mar. 31, 2006) (Batts, J.), appeal dismissed, 540 F.3d 94 (2d Cir. 2008), aff'd, 129 S.Ct. 2230 (2009); Goss v. Fairfield Hous. Auth., 3:03 Civ. 0935 (WIG), 2006 WL 314548 at *1 (D. Conn. Feb. 9, 2006); Burnell v. Whidden, 3:05 Civ. 825 (MRK), 2005 WL 2739085 at *4 (D. Conn. Oct. 19, 2005); Iwachiw v. New York State Dep't of Motor Vehicles, 299 F. Supp. 2d 117, 121 (E.D.N.Y. 2004), aff'd, 396 F.3d 525 (2d Cir. 2005).  Therefore, the proposed amended complaint does not state claims against the Distributor Defendants for fraud in the

inducement, breach of contract, tortious interference, RICO violations or conspiracy to commit conversion, theft of corporate funds, breach of fiduciary duty or misrepresentation and the proposed amended complaint is futile to the extent it seeks to assert these claims against the Distributor Defendants.

ii. Breach of Contract
Claim Against Kwon

Judge Holwell dismissed plaintiffs' claims for a declaratory judgment and breach of contract against all defendants except Manitou Springs because Manitou Springs is the only defendant alleged to have been a party to the breached contract. The proposed amended complaint does not allege that Kwon was a party to any contract with plaintiffs. Therefore, the proposed amended complaint does not state a claim against Kwon for breach of contract and the proposed amended complaint is futile to the extent it seeks to assert this claim against him.

iii. Fraud

Plaintiffs' fraud claim is based two separate statements contained in the contract that Jee originally presented to Moolsan. Plaintiffs allege that by representing that the cost of an exclusive distributorship of Manitou Springs Mineral Water was $1,000,000 when it was in fact $500,000, defendants caused plaintiffs to suffer economic injury (Am. Compl. ¶ 39). In

12

addition, plaintiffs allege that by virtue of a provision in the contract requiring plaintiffs to purchase one million bottles of water per year, defendants falsely represented that they were capable of producing more than one million bottles of water per year (Am. Compl. ¶ 42).  For the reasons stated below, I find that neither of plaintiffs' fraud theories states a claim under New York law.

Under New York law, a claim for fraud in the inducement requires proof that: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  Wall v. CSX Transp., Inc., 471 F.3d 410, 415-16 (2d Cir. 2006), citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir.1996)

Furthermore, Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud or mistake."  Fed.R.Civ.P. 9(b).  Thus, "[t]he complaint must identify the statements plaintiff asserts were fraudulent and why, in plaintiff's view, they were fraudulent, specifying who made them, and where and when they were made."  In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 69-70 (2d Cir. 2001), citing Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993); see also Suez Equity

<u>Investors, L.P. v. Toronto-Dominion Bank</u>, 250 F.3d 87, 95 (2d Cir. 2001); <u>Novak v. Kasaks</u>, 216 F.3d 300, 306 (2d Cir. 2000). When a complaint asserts a fraud claim against multiple defendants, the role of each defendant must be alleged with particularity.  <u>Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.</u>, <u>supra</u>, 404 F.3d 566 at 579-80.

Plaintiffs' fraud claim is based on statements contained in the contract that Jee presented to Moolsan.  Presumably, the alleged liability of Kwon and Manitou Springs is premised on Kwon's signature to the contract.[5]  Although plaintiffs allege only that the contract was made in 2004 and do not specify where it was executed, plaintiffs do specify who executed the contract, which statements were fraudulent and why they were fraudulent.  Moreover, they attach the contract to their complaint.

These details give defendants "fair and reasonable notice of the claim" and are therefore sufficient to satisfy Rule 9(b) in this case.  <u>Simon-Whelan v. Andy Warhol Found. for the Visual Arts, Inc.</u>, 07 Civ. 6423 (LTS), 2009 WL 1457177 at *9 (S.D.N.Y. May 26, 2009) (Swain, J.), <u>citing</u> <u>Int'l Motor Sports</u>

---

[5]A fraudulent statement made to a third party is actionable under New York Law if a plaintiff "alleges that he relied to his detriment on the defendant's misrepresentation and that the defendant intended the misrepresentation to be conveyed to him." <u>Secs. Investor Protection Corp. v. BDO Seidman, LLP</u>, 222 F.3d 63, 71 (2d Cir. 2000).

Group v. Gordon, 98 Civ. 5611 (MBM), 1999 WL 619633, at *3
(S.D.N.Y. Aug. 16, 1999) (Mukasey, J.) ("Rule 9(b) does not
require 'a plaintiff [to] plead dates, times and places with
absolute precision, so long as the complaint gives fair and
reasonable notice to defendants of the claim and the grounds upon
which it is based'"); BRS Assocs., L.P. v. Dansker, 246 B.R. 755,
768 (S.D.N.Y. 2000) (Batts, J.) ("Rule 9(b) serves several
purposes -- to put the defendant on notice of the details of the
claims against him, to protect a defendant's reputation and
goodwill from unfounded allegations and to prevent strike
suits."); see also Tribune Co. v. Purcigliotti, 869 F. Supp.
1076, 1087 (S.D.N.Y. 1994) (Preska, J.) ("The rule is designed to
provide a defendant with fair notice of a plaintiff's claim,
enable preparation of a defense, protect a defendant from harm to
his reputation, and reduce the number of strike suits."), aff'd,
66 F.3d 12 (2d Cir. 1995).

Nevertheless, even drawing all inferences in plain-
tiffs' favor, their first fraud theory does not state a claim.
Plaintiffs' first specification of fraud alleges, in substance,
that Jee (and Kwon by virtue of his signature) overstated the
price of the water in the contract to enable Jee to pocket the
difference between the contract price and the true price.
Plaintiffs cannot allege, however, that they relied on this
alleged misrepresentation.  Assuming rational conduct, a higher

price for a commodity decreases the likelihood that a buyer will purchase it, while a lower price increases the likelihood.  The flaw in plaintiffs' theory is that it alleges an overstatement of the price -- conduct by Jee that would necessarily make the contract <u>less</u> attractive to plaintiffs.  Because plaintiffs cannot allege that they would not have entered into the contract had they known that the true price of the water was less than what they were willing to pay, plaintiffs cannot allege they reasonably relied on the misrepresentation.

Plaintiffs also claim that Kwon's statements in 2005 and 2006 denying that he signed the contract containing a $1,000,000 price for the water rights were "materially false" (Am. Compl. ¶ 17).  However, even if these statements were false, there is no allegation that plaintiffs took any action in reliance on these statements or were injured by them in any way.

Plaintiffs' second fraud theory alleges that Manitou Springs and Kwon committed fraud by virtue of a provision in the contract requiring plaintiffs to purchase one million bottles of water per year (Am. Compl. ¶ 42).  Plaintiffs contend that this statement misrepresented defendants' production capacity because "at the time of inducement . . . defendants had a grossly inadequate factory operational system which was barely capable of supplying materially less than even the contract-minimum" (Am. Compl. ¶ 43).  Plaintiffs allege that they relied on this repre-

16

sentation when they purchased distribution rights from Manitou Springs and were damaged as a result of their investment (Am. Compl. ¶ 44).

This theory does not state a claim for fraud because, even drawing all reasonable inferences in plaintiffs' favor, this statement was not a false representation.  The only provision in the contract that requires a minimum purchase states that the purchaser must order "more than $1,000,000 per year from 2 years after starting the business" (Am. Compl. Ex. 1, ¶4).  To the extent that this paragraph makes an implied representation about defendants' production capacity at all, it is a representation about their capacity in the future, not their present capacity. Plaintiffs cannot allege that such a representation was false when made.

Furthermore, to the extent plaintiffs are alleging that Manitou Springs and Kwon committed fraud by impliedly representing that Manitou Springs had production capacity that it did not, in fact, possess, their fraud claim is indistinguishable from a claim alleging that a defendant committed fraud by entering into a contract with no intention of performing.  Under New York Law, a claim for fraud cannot be maintained where it "arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations."  PI, Inc. v.

Quality Prods., Inc., 907 F. Supp. 752, 761 (S.D.N.Y. 1995)
(Koeltl, J.); Sudul v. Computer Outsourcing Servs., 868 F. Supp.
59, 62 (S.D.N.Y. 1994) (Martin, J.).  Rather, "under New York
law, parallel fraud and contract claims may be brought only if
the plaintiff (1) demonstrates a legal duty separate from the
duty to perform under the contract; (2) points to a fraudulent
misrepresentation that is collateral or extraneous to the con-
tract; or (3) seeks special damages that are unrecoverable as
contract damages." Merrill Lynch & Co. Inc. v. Allegheny Energy,
Inc., 500 F.3d 171, 183 (2d Cir. 2007), citing Bridgestone-
/Firestone, Inc. v. Recovery Credit Servs., Inc., supra, 98 F.3d
at 20.

        Here, plaintiffs have not alleged that defendants had a
legal duty apart from their contractual duty to plaintiffs and
have not specified any damage that occurred as a result of the
fraud that is not recoverable as contract damages.  In addition
the statements at issue are not collateral to the contract but
are essential terms of the contract.  A representation is collat-
eral to a contract when it pertains to present facts and not
"promissory statement[s] of what will be done in the future."
See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., supra,
500 F.3d at 184, citing First Bank of the Americas v. Motor Car
Funding, Inc., 257 A.D.2d 287, 292, 690 N.Y.S.2d 17, 21 (1st
Dep't 1999).  As discussed above, the contractual provision

identified in connection with plaintiffs' second fraud theory contains at most a promissory statement of what will be done in the future and, thus, does not give rise to a separate claim for fraud.  Thus, the proposed amended complaint fails to state a claim for fraud and is futile to the extent it attempts to do so.

### iv.  Tortious Interference

The proposed amended complaint alleges that "defendants have committed one or more act[s] of tortious interference with plaintiffs' business rights; with plaintiffs' contractual rights; and with plaintiffs' legal rights, causing significant damages." (Am. Compl. ¶ 52).  These amendments also fail.

In order to state a claim for tortious interference with contractual relations, a plaintiff must allege, "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."  Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02 (2d Cir. 2006)(internal quotations ommitted); White Plains Coat & Apron Co., Inc. v. Cintas Corp., 8 N.Y.3d 422, 426, 867 N.E.2d 381, 383, 835 N.Y.S.2d 530, 532 (2007).

Judge Holwell dismissed plaintiffs' original tortious interference with contract claim because plaintiffs failed to identify a specific third-party contract.  The amended complaint suffers from precisely the same deficiency.  Although plaintiffs state in their supporting papers that defendants interfered with their customer contracts (Memorandum of Law in Further Support of Motion to Amend Complaint, dated Feb. 10, 2009 (Docket Item 82), ("Pls.' Mem. in Further Support"), at 13-14), the Amended Complaint does not specify a single customer contract with which defendants interfered.

In order to state a claim for tortious interference with business relations under New York Law, a plaintiff must allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008); Goldhirsh Group, Inc. v. Alpert, 107 F.3d 105, 108-109 (2d Cir. 1997); see Carvel Corp. v. Noonan, 3 N.Y.3d 182, 189-90, 818 N.E.2d 1100, 1103, 785 N.Y.S.2d 359, 362 (2004).

In their supporting papers, plaintiffs assert that their tortious interference claim is based on defendants' "diversion of water to other entities in violation of plaintiffs'

20

exclusive rights" (Pls.' Mem. in Support at 7), and state that they were unable "to fulfill their obligations to their own clients" (Pls.' Mem. in Further Support at 14).  In their amended complaint, however, plaintiffs fail to identify a single specific client relationship with which defendants interfered and, thus, do not state a claim for tortious interference with business relations.[6]  See Baker v. Guardian Life Ins. Co. of Am., 785 N.Y.S.2d 437, 438-39, 12 A.D.3d 285, 286 (1st Dep't 2004) (dismissing claim for tortious interference with business relations where plaintiff failed to allege a specific business relationship); Schoettle v. Taylor, 723 N.Y.S.2d 665, 666, 282 A.D.2d 411, 411 (1st Dep't 2001) (same).

Plaintiffs' supporting papers also identify several of Kang's business associations as relationships with which defendants allegedly interfered (Pls.' Mem. In Support at 7-8). However, they do not allege that defendants directed any action toward these third parties.  See Carvel Corp. v. Noonan, supra, 3 N.Y.3d at 192, citing G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762, 768 (2d Cir. 1995) ("conduct constituting tortious interference with business relations is, by definition, conduct directed

---

[6]Although plaintiffs assert that they have identified third parties in ¶ 35 of their Amended Complaint (Pls.' Mem in Further Support at 14), this paragraph contains a list of other distributors to whom defendants sold spring water (Am. Compl. ¶ 35).  Plaintiffs do not allege that they ever had any business relationship with these entities.

not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."). Therefore, plaintiffs also fail to state a claim for tortious interference with these business relations. Thus, the proposed amended complaint also fails to state a claim for tortious interference with either contractual or business relations and is futile to the extent it attempts to do so.

### v. Conspiracy

Plaintiffs' original complaint included a claim for "Conspiracy to Violate the Law" (Compl. ¶¶ 47-48). Judge Holwell dismissed this claim because conspiracy is not an independent tort under New York Law (Transcript of Proceedings, dated Dec. 20, 2007, at 4:21-5:1, annexed as Ex. 3 to Pls.' Mem. in Support). Plaintiffs' proposed amended complaint asserts claims for conspiracy to commit (1) conversion, (2) theft of corporate funds, (3) breach of fiduciary duty, and (4) misrepresentation. As explained below, by adding the object of the alleged conspiracy, plaintiffs state a claim for breach of fiduciary duty against Manitou Springs and Kwon. With respect plaintiffs' conversion, theft of corporate funds and misrepresentation claims, however, the proposed amended complaint fails to remedy the fundamental legal flaw identified by Judge Holwell because

the proposed amended complaint fails to state claims alleging the underlying torts.

Conspiracy is not an independent tort under New York Law.  Kirch v. Liberty Media Corp., supra, 449 F.3d at 401 ("New York does not recognize an independent tort of conspiracy.") citing Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969, 503 N.E.2d 102, 102, 510 N.Y.S.2d 546, 547 (1986).  Conspiracy allegations may, however, be used "to connect the actions of separate defendants with an otherwise actionable tort."  Fisk v. Letterman, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (Marrero, J.), citing Alexander & Alexander of N.Y. v. Fritzen, supra 68 N.Y.2d at 969, 503 N.E.2d 102, 103, 510 N.Y.S.2d at 547.

Thus, "[a] claim of conspiracy 'cannot stand alone' and must be dismissed if the underlying independent tort has not been adequately pleaded."  Gladstone Bus. Loan, LLC v. Rande Corp., 09 Civ. 4255 (LMM), 2009 WL 2524608 at *6 (S.D.N.Y. Aug. 17, 2009) (McKenna, J.), quoting Romano v. Romano, 2 A.D.3d 430, 432, 767 N.Y.S.2d 841, 842 (2d Dep't 2003).

In addition to alleging the elements of the underlying tort, a plaintiff asserting vicarious liability by virtue of a conspiracy must allege facts showing: "(1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the

furtherance of a plan or purpose; and (4) resulting damage or injury." Kottler v. Deutsche Bank AG, 607 F. Supp. 2d 447, 463 (S.D.N.Y. 2009) (Crotty, J.), citing Best Cellars Inc. v. Grape Finds at Dupont, Inc., 90 F. Supp. 2d 431, 446 (S.D.N.Y. 2000) (Sweet, J.).  As explained below, plaintiffs properly allege the elements of a breach of fiduciary duty claim and facts showing that Kwon and Manitou Springs conspired to commit a breach of fiduciary duty.  None of plaintiffs' other conspiracy claims, however, properly allege the elements of the underlying tort and therefore, it is unnecessary to address whether plaintiffs have adequately alleged the elements of a conspiracy with respect to these torts.

## A. Conversion

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006), citing Vigilant Ins. Co. of Am. v. Hous. Auth., 87 N.Y.2d 36, 44, 660 N.E.2d 1121, 1126, 637 N.Y.S.2d 342, 347 (1995).  Where "the property in question is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 220

24

(Lynch, J.), citing Republic of Haiti v. Duvalier, 626 N.Y.S.2d 472, 475 211 A.D.2d 379, 384, (1st Dep't 1995).

Furthermore, "a claim of conversion cannot be predicated on a mere breach of contract." Armored Group, LLC v. Homeland Sec. Strategies, Inc., No. 07 CV 9694 (LAP), 2009 WL 1110783 (S.D.N.Y. Apr. 21, 2009) (Preska, Ch. J.); Gould Paper Corp. v. Madisen Corp., 614 F. Supp. 2d 485, 493 (S.D.N.Y. 2009) (Chin, J.), citing Citadel Mgmt., Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000) (Sweet, J.) (claim for conversion "will not lie if it merely duplicates a breach of contract claim.").

Assuming the truth of all facts in the complaint, plaintiffs do not state a claim for the underlying tort of conversion.  Plaintiffs allege that "defendants have failed and refused to return the funds to plaintiff, and have taken steps to permanently deprive the plaintiffs of those funds" (Am. Compl. ¶ 55).  The facts do not support a conversion claim based on the actions of Manitou Springs or Kwon because the only funds remitted to them were the amounts due under the contract for distribution rights and advance payment for bottles of water.  Plaintiffs' demand for return of those funds states a claim for a restitutionary remedy under their breach of contract claim but does not state a claim for conversion.  See Armored Group, LLC v. Homeland Sec. Strategies, Inc., supra, 2009 WL 1110783 at *3,

25

citing <u>D'Ambrosio v. Engel</u>, 292 A.D.2d 564, 565, 741 N.Y.S.2d 42, 44 (2d Dep't 2002) ("failure to return a deposit provided for under an agreement does not give rise to a distinct claim for conversion under New York law but rather constitutes a claim for breach of contract."); <u>Amadasu v. Ngati</u>, 05 Civ. 2585 (JFB)(LB) 2006 WL 842456 at *11 (E.D.N.Y. March 27, 2006) (allegations that lawyers failed to return deposits client paid into escrow accounts did not state a claim for conversion).

Similarly, there is no allegation in the proposed amended complaint that Moolsan remitted any funds to Jee, and, thus, the facts alleged in the Amended Complaint do not state a claim for conversion based on his actions.

Since the proposed amended complaint does not state a claim for conversion, it is futile to the extent it attempts to state a claim for conspiracy to commit conversion.

### B. <u>Theft of Corporate Funds</u>

"Theft" is not a claim under New York Law. <u>Arts4All, Ltd. v. Hancock</u>, 773 N.Y.S.2d 348, 353, 5 A.D.3d 106, 110 (1st Dep't 2004). Therefore, amendment of the complaint to include this claim would be futile.

To the extent that plaintiffs may be attempting to state a claim for misappropriation or waste of corporate funds, such claims require a violation of the fiduciary duty owed by a

26

corporate officer.  See Superintendent of Ins. of State of N.Y. v. Freedman, 443 F. Supp. 628, 638 (2d Cir. 1977); N.Y. Bus. Corp. Law. § 720.  Claims for violation of an officer's fiduciary duty are generally brought by the corporation itself unless the officer owes an independent duty to the plaintiff.  In re Fischer, 308 B.R. 631, 651-62 (E.D.N.Y. 2004), citing Abrams v. Donati, 66 N.Y.2d 951, 953, 489 N.E.2d 751, 751-52, 498 N.Y.S.2d 782, 783 (1985).  Plaintiffs have not alleged that Kwon or any other defendant was a corporate officer of Moolsan, and therefore have failed to state a claim for misappropriation or waste of corporate funds.  Thus, the amended complaint is futile to the extent it attempts to allege conspiracy to misappropriate Moolsan's funds.

### C. Breach of Fiduciary Duty

Plaintiffs allege that "[d]efendants' acts and omissions in concert and participation with Young Gil Jee's breaches of fiduciary duty, and their active facilitation of such breaches, result[ed] in plaintiffs' loss of $500,000.00[.]" (Am. Compl. ¶ 59).

In order to state a claim for breach of fiduciary duty under New York Law, a plaintiff must allege "(1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach."

Meisel v. Grunberg, 07 Civ. 11610 (PKL), 2009 WL 2777165 at *9
(S.D.N.Y. Aug. 31, 2009) (Leisure, J.); accord Whitney v.
Citibank. N.A., 782 F.2d 1106, 1115 (2d Cir. 1986).  Furthermore,
because "the existence of a fiduciary relationship normally
depends on the facts of a particular relationship," a claim
alleging such a relationship is generally not dismissed for
failure to state a claim.  World Wrestling Entm't, Inc. v. Jakks
Pacific, Inc., 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007) (Karas,
J.), citing Abercrombie v. Andrew College, 438 F. Supp. 2d 243,
274 (S.D.N.Y. 2006) (Karas, J.).

        Plaintiffs assert that Jee acted as plaintiffs' agent
and "owed a duty of fidelity and loyalty at all relevant times,"
(Am. Compl. ¶¶ 12, 59).  An agency relationship is created by
"(1) the manifestation by the principal that the agent shall act
for him; (2) the agent's acceptance of the undertaking; and (3)
the understanding of the parties that the principal is to be in
control of the undertaking."  See Cleveland v. Caplaw Enters.,
448 F.3d 518, 522 (2d Cir. 2006)(internal quotations omitted);
Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A., 347 F.3d
448, 462 (2d Cir. 2003).  Control is established when the princi-
pal "prescrib[es] what the agent shall or shall not do before the
agent acts, or at the time when he acts, or at both times."
Cleveland v. Caplaw Enters., supra, 448 F.3d at 522, citing
Restatement (Second) of Agency § 14 cmt. a.

28

Plaintiffs assert that "Jee represented that [he] would obtain an exclusive contract for the benefit of plaintiff Kang to sell mineral water," and that Moolsan paid Manitou Springs in accordance with this contract (Am. Compl. ¶¶ 12, 15).  Drawing all inferences in plaintiffs' favor, I find that these facts sufficiently state the mutual assent and control necessary to allege an agency relationship.  As Moolsan's agent, Jee would owe the corporation a fiduciary duty.  See Evvtex Co., Inc. v. Hartley Cooper Assocs. Ltd., 102 F.3d 1327, 1332 (2d Cir. 1996). Plaintiffs allege that Jee breached that duty by secretly accept- ing compensation for directing business to Manitou Springs, and that the ultimate source of that compensation was Moolsan (Am. Compl. ¶¶ 59, 21).  If true, these facts would establish a breach of Jee's fiduciary duty.  See Evvtex Co., Inc. v. Hartley Cooper Assocs. Ltd., supra, 102 F.3d at 1332, citing Restatement (Sec- ond) of Agency § 381 (Agent has fiduciary obligation to "use reasonable efforts to give his principal information which is relevant to affairs entrusted to him"); United States v. Miller, 997 F.2d 1010, 1018 (2d Cir. 1993)("It is settled law that an agent owes his principal a duty of loyalty, and must account for any profits realized in connection with his representation of the principal").  Finally, plaintiffs allege that they suffered an injury because the payment to Jee increased the contract price by

29

$500,000 (Am. Compl. ¶ 21).  Thus, plaintiffs have alleged that Jee breached his fiduciary duty to Moolsan.

Plaintiffs also state a claim against Manitou Springs and Kwon for this tort by virtue of conspiracy.  They allege that Kwon and Jee had a "scheme . . . to ripoff money from plaintiffs," (Am. Compl. ¶ 15).  They also allege that Kwon committed an overt act and intentionally participated in the scheme by "creating" the contract to facilitate payment to Jee "for funneling investment money" to Manitou Springs (Am. Compl. ¶¶ 15, 21).  Finally, plaintiffs again allege damage by virtue of the increased contract price as a result of the kickback (Am. Compl. ¶ 21).

Thus, plaintiffs' state a claim against both Kwon and Manitou Springs for breach of fiduciary duty.  Although Kwon was acting as president of Manitou Springs during the events in question, "a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable." Bano v. Union Carbide Corp., 273 F.3d 120 (2d Cir. 2001), citing Lopresti v. Terwilliger, 126 F.3d 34, 42 (2d Cir. 1997).  In addition, Manitou Springs can be held liable for Kwon's actions because he was acting within the scope of his employment. Kwon v. Yun, 606 F. Supp. 2d 344, 362 (S.D.N.Y. 2009) (Lynch, J.).  Therefore, the proposed amended complaint does state a claim against Kwon and

Manitou Springs for breach of fiduciary duty through a conspir-
acy, and is not futile in this respect.

### D. Misrepresentation

Under New York Law, the elements of fraud and misrep-
resentation claims are the same.  Sea-Land Serv., Inc. v.
Remington Rand Corp., 84 Civ. 177 (LBS), 1986 WL 8862 at *3
(S.D.N.Y. Aug. 7, 1986) (Sand, J.); Ainger v. Michigan Gen.
Corp., 476 F. Supp. 1209, 1227 (S.D.N.Y. 1979) (Cannella, J.).
As discussed above, the proposed amended complaint does not state
a claim for fraud.  Because plaintiffs have failed to plead the
underlying claim of fraud, liability cannot be imposed on the
theory of a conspiracy to defraud, see Canada, Inc. v. Aspen
Tech., Inc., 544 F. Supp. 2d 199, 232 (S.D.N.Y. 2008) (Keenan,
J.) ("Under New York law, where acts underlying claim of conspir-
acy are same as those underlying other claims alleged in com-
plaint, conspiracy claim is dismissed as duplicative."), and the
proposed amended complaint is futile to the extent it attempts to
assert such a claim.

### vi. RICO Violations

Plaintiffs next allege that defendants have committed
substantive violations of RICO.  For the reasons set forth below,

31

amendment of the Complaint to include RICO violations would also be futile.[7]

An essential element of any RICO violation is a pattern of racketeering activity. Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008), citing GICC Capital Corp. v. Tech. Fin. Group, 67 F.3d 463, 465 (2d Cir. 1995). This, in turn, requires a showing of at least two related predicate acts that amount to, or pose a threat of, continuing criminal activity. See Schlaifer Nance & Co. v. Warhol, 119 F.3d 91, 97 (2d Cir. 1997), citing H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989).

Where predicate acts are based on fraudulent conduct, plaintiffs must comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure to state a claim under RICO.  When alleging mail or wire fraud, this means that a plaintiff must allege, "the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent." Spool v. World Child Int'l Adoption Agency, supra, 520 F.3d at 185, citing Mills

---

[7]To the extent plaintiffs are attempting to assert a claim under New York's analog to RICO (Am. Compl. ¶ 63) the proposed amendment is futile because there is no private right of action under the state statute.  See N.Y. Penal Law § 460.50; Le Paw v. BAT Indus. P.L.C., 96 Civ. 4373 (JG), 1997 WL 242132 at *1 (E.D.N.Y. Mar. 6, 1997).

v. Polar Molecular Corp., supra, 12 F.3d at 1176 (alterations in original).

Plaintiffs allege that defendants committed seven different predicate acts:  one act of mail fraud by sending "dual documents" through the United States mails; six acts of wire fraud by "verbally reiterat[ing]" the terms of the contract and "fraudulently" sending a wire transfer; and one act of perjury.[8] (Am. Compl. ¶¶ 71-77).

These allegations, however, are not pled with the particularity required by Rule 9(b).  Not a single count speci-fies which of the defendants was involved in the allegedly fraudulent activities.  Rather, each allegation states that the fraud was committed by "some defendants, through Young Gil Jee." Such vague allegations are insufficient to satisfy the require-ments of 9(b).  See Ellison v. Am. Image Motor Co., 36 F. Supp. 2d 628, 640 (S.D.N.Y. 1999) (Chin, J.), quoting In re Blech Sec. Litig., 928 F. Supp. 1279, 1294 (S.D.N.Y. 1996) (Sweet, J.) ("Rule 9(b) is 'not satisfied by filing a complaint in which defendants are clumped together in vague allegations.'")

Finally, even if plaintiffs' allegations did meet Rule 9(b)'s particularity requirement, plaintiffs do not adequately

---

[8]Perjury is not a predicate act for purposes of RICO, and, therefore, I do not consider it here.  See 18 U.S.C. § 1961(1); World Wrestling Entm't, Inc. v. Jakks Pacific, Inc., supra, 530 F. Supp. 2d at 513 n.10, citing United States v. Eisen, 974 F.2d 246, 254 (2d Cir. 1992).

allege a pattern of racketeering activity.  To meet the continu-
ity requirement, a plaintiff must allege either an "open-ended
pattern of racketeering activity (i.e., past criminal conduct
coupled with a threat of future criminal conduct) or a closed-
ended pattern of racketeering activity (i.e., past criminal
conduct extending over a substantial period of time)."  GICC
Capital Corp. v. Tech. Fin. Group, supra, 67 F.3d at 466 (inner
quotations omitted).

       To determine if open-ended continuity exists, the
nature of the predicate acts, or the nature of the enterprise at
whose behest the predicate acts were performed, must be examined.
GICC Capital Corp. v. Tech. Fin. Group, supra, 67 F.3d at 466.

> [I]n cases where the acts of the defendant or the
> enterprise were inherently unlawful, such as murder or
> obstruction of justice, and were in pursuit of inher-
> ently unlawful goals, such as narcotics trafficking, or
> embezzlement,the courts generally have concluded that
> the requisite threat of continuity was adequately
> established by the nature of the activity, even though
> the period spanned by the racketeering acts was short.

United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995).

       In this case, neither defendants' conduct nor the
alleged goal of defendants' conduct is inherently unlawful.  As
discussed above, defendants' actions did not constitute common
law fraud.  Even if they did, fraud is not "'inherently unlawful'
in the RICO context."  Int'l Bhd. of Teamsters v. Carey, 297 F.
Supp. 2d 706, 715 (S.D.N.Y. 2004) (Swain, J.).

Accordingly, other factors must be considered to determine if a requisite threat of continuity exists. GICC Capital Corp. v. Tech. Fin. Group, supra, 67 F.3d at 466. One such factor is the threat that the alleged unlawful acts will continue into the future. DeFalco v. Bernas, 244 F.3d 286, 323 (2d Cir. 2001); Schlaifer Nance & Co. v. Warhol, supra, 119 F.3d at 97.

The proposed amended complaint contains no facts to support a finding that the alleged acts will be repeated, and plaintiffs allege only that defendants had "plans to continue well into the future." Such vague allegations of continuity are insufficient to support a finding of open-ended continuity. See Thai Airways Int'l Ltd. v. United Aviation Leasing B.V., 842 F. Supp. 1567, 1572 (S.D.N.Y. 1994) (Mukasey, J.).

To determine whether closed-ended continuity exists, the following non-exclusive factors are relevant: (1) the length of time over which the alleged predicate acts took place; (2) the number and variety of acts; (3) the number of participants; (4) the number of victims and (5) the presence of separate schemes. See GICC Capital Corp. v. Tech. Fin. Group, supra, 67 F.3d at 467; Thai Airways Int'l Ltd. v. United Aviation Leasing B.V., supra, 842 F. Supp. at 1572 ("there is insufficient threat of continuity to support a RICO cause of action where the racketeering acts involved a brief period of time, relatively few criminal

acts, an uncomplicated scheme, few participants, and few vic-
tims."). Although there is no minimum time period necessary to
sustain a claim alleging closed-ended continuity, the Second
Circuit "has never found a closed-ended pattern where the predi-
cate acts spanned fewer than two years." First Capital Asset
Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 2004);
World Wrestling Entm't, Inc. v. Jakks Pacific, Inc., supra, 530
F. Supp. 2d at 497.

          In this case, the predicate acts spanned less than two
years. Such a short period is insufficient to support a finding
of closed-ended continuity. Furthermore, the alleged scheme had
only two participants, and Kang and his company, Moolsan, were
the only victims. In addition, all of the alleged predicate acts
were "subparts" of the same transaction and, thus, do not consti-
tute continuous activity under RICO. Schlaifer Nance & Co. v.
Estate of Warhol, supra, 119 F.3d at 97 (finding no pattern of
racketeering activity where alleged predicate acts were only
"subparts" of the negotiation of an agreement and cautioning that
"courts must take care to ensure that the plaintiff is not arti-
ficially fragmenting a singular act into multiple acts simply to
invoke RICO.").

          Finally, even if the behavior described in plaintiffs'
complaint amounted to common law fraud, Courts have repeatedly
held that a simple fraud scheme is insufficient to state a RICO

violation.  See Renner v. Chase Manhattan Bank, 98 Civ. 926
(CSH), 1999 WL 47239 at *9 (S.D.N.Y. Feb. 3, 1999) (Haight, J.)
(finding no continuity where "acts were narrowly directed toward
a single fraudulent end with a limited goal.") (internal quota-
tions omitted); see also Casio Computer Co., Ltd. v. Sayo, 98
Civ. 3772 (WK), 2000 WL 1877516 at *12 (S.D.N.Y. Oct. 13, 2000)
(Knapp, J.); Skylon Corp. v. Guilford Mills, Inc., 93 Civ. 5581
(LAP), 1997 WL 88894 at *6 (S.D.N.Y. Mar. 3, 1997) (Preska, J.),
citing United States v. Aulicino, supra, 44 F.3d at 1111.

        Accordingly, the facts of this case do not give rise to
closed-ended continuity.

                        vii. RICO Conspiracy

        Plaintiffs also allege that defendants conspired to
commit RICO violations (Am. Compl. ¶¶ 83-84).  Because plaintiffs
fail to state a substantive claim under RICO, amendment of the
complaint to include civil RICO conspiracy claims would necessar-
ily be futile.  See Gross v. Waywell, 628 F. Supp. 2d 475, 500
(S.D.N.Y. 2009) (Marrero, J.) ("The dismissal of a RICO action
because the substantive claims are deficient compels that related
charges under § 1962(c) of conspiracy to violate RICO also must
fail.")

                  b. Undue Delay
_____          and Prejudice___

_____Defendants also oppose the motion to amend on the
grounds of undue delay and prejudice.

          Delay alone, in the absence of bad faith or prejudice,
is usually not sufficient reason for denying a motion to amend.
Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008);
Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234-35 (2d
Cir. 1995); State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843,
856 (2d Cir. 1981).  Thus, the court may "deny leave to amend
'where the motion is made after an inordinate delay, no satisfac-
tory explanation is offered for the delay, and the amendment
would prejudice' other parties." Grace v. Rosenstock, supra, 228
F.3d at 53-54, quoting Cresswell v. Sullivan & Cromwell, 922 F.2d
60, 72 (2d Cir. 1990) (emphasis added); see also Commander Oil
Corp. v. Barlo Equip. Corp., 215 F.3d 321, 333 (2d Cir. 2000)
(permitting amendment of answer to assert additional affirmative
defense after a seven-year delay does not constitute an abuse of
discretion in the absence of prejudice).

          Defendants contend that they will be prejudiced by
amendment because "the addition of fraud causes of action, addi-
tional parties, and RICO causes of action greatly expands the
scope, significance and ramifications of the Plaintiffs' claim"
and because "they will be forced to further answer, engage in

                              38

further discovery, [and] conduct additional pre-trial motion practice at great expense." (Defs.' Mem. In Opp. at 24-25).

In determining whether a party will be prejudiced, courts "generally consider whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" Monahan v. New York City Dep't of Corrs., 214 F.3d 275, 284 (2d Cir. 2000), quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993).  In evaluating these factors, courts consider whether a party has had prior notice of a claim and whether the claim arises from the same transaction as claims in the original pleading.  See Monahan v. New York City Dep't of Corrs., supra, 214 F.3d at 284; Hanlin v. Mitchelson, 794 F.2d 834, 841 (2d Cir. 1986).

Judged by these factors, amendment of the complaint to add a claim for breach of fiduciary duty and conspiracy to do so will not prejudice defendants.  Leave to amend is denied as to all claims except for plaintiffs' breach of fiduciary duty/conspiracy claim and denied as to all parties except Manitou Springs and Kwon.  Amendment of the complaint to assert this claim will not require significant additional resources or sig-nificantly delay resolution of this matter because the facts

surrounding the breach of fiduciary duty claim were alleged in plaintiffs original complaint and relate to the same transaction as the existing claims.  The additional discovery or motion practice, if any, that may result from this one claim will not prejudice defendants.  <u>A.V. by Versace, Inc. v. Gianni Versace S.p.A.</u>, 87 F. Supp. 2d 281 (S.D.N.Y. 2000) (Leisure, J.), <u>citing Block v. First Blood Assocs.</u>, <u>supra</u>, 988 F.2d at 351 ("allegations that an amendment will require the expenditure of additional time, effort, or money do not constitute 'undue prejudice.'").

### c. <u>Summary</u>

For all the foregoing reasons, the motion to amend is granted to the extent plaintiff seeks to add a claim for conspiracy to breach Jee's fiduciary duties to plaintiffs and denied in all other respects.

### B. <u>Motion for Sanctions</u>

Defendants move for sanctions under Rule 11 of the Federal Rules of Civil Procedure, arguing that plaintiffs' motion to amend is completely without merit (Memorandum of Law in Support of Motion for Sanctions, dated Feb. 11, 2009, ("Defs.' Mem. in Support"), (Docket Item 79), at 1-2).

Rule 11(c) permits a Court to impose sanctions for violations of Rule 11(b).  Fed.R.Civ.P. 11(c)(1); <u>Perez v. Posse Comitatus</u>, 373 F.3d 321, 325 (2d Cir. 2004); <u>Murawski v. Pataki</u>, 514 F. Supp. 2d 577, 590 (S.D.N.Y. 2007) (Holwell, J.) ("[T]he decision to impose Rule 11 sanctions rests in the sound discretion of the court.").

Rule 11(b)(2) provides, in pertinent part, that:

By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

. . . .

(2) the claims . . . are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery [.]

Fed.R.Civ.P. 11(b).  "In evaluating whether the signer of a filing has violated Rule 11, the district court applies an objective standard of reasonableness[.]"  <u>MacDraw, Inc. v. CIT Group Equip. Fin., Inc.</u>, 73 F.3d 1253, 1257 (2d Cir. 1996); <u>In re Pennie & Edmonds LLP</u>, 323 F.3d 86, 90 (2d Cir. 2003).  A party advances an objectively unreasonable claim if, at the time the party signed the pleading, "it is patently clear that [the] claim has absolutely no chance of success under the existing prece-

dents, and where no reasonable argument can be advanced to ex-
tend, modify or reverse the law as it stands[.]"  Eastway Const.
Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985);
Kropelnicki v. Siegel, 290 F.3d 118, 131 (2d Cir. 2002); see also
Baker v. Dorfman, 99 Civ. 9385 (DLC), 2000 WL 1201467 at *4
(S.D.N.Y. Aug. 22, 2000) (Cote, J.) ("frivolous" legal arguments
violate Rule 11(b)(2)).

     Moreover, "Rule 11 imposes a duty on every attorney to
conduct a reasonable pre-filing inquiry into the evidentiary and
factual support for the claim."  E. Gluck Corp. v. Rothenhaus,
252 F.R.D. 175, 179 (S.D.N.Y. 2008) (Marrero, J.).  In this
regard, "sanctions may not be imposed unless a particular allega-
tion is utterly lacking in support."  Storey v. Cello Holdings,
L.L.C., 347 F.3d 370, 388 (2d Cir. 2003), citing O'Brien v.
Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996).

     Finally, sanctions under Rule 11 "should be imposed
with caution," Murawski v. Pataki, supra, 514 F. Supp. 2d at 590,
"resolving all doubts in favor of the part[y] facing sanctions.'"
Coakley v. Jaffe, 72 F. Supp. 2d 362, 365 (S.D.N.Y. 1999)
(Rakoff, J.); Abdelhamid v. Altria Group, Inc., 515 F. Supp. 2d
384, 392 (S.D.N.Y. 2007) (Scheindlin, J.), citing Rodick v. City
of Schenectady, 1 F.3d 1341, 1350 (2d Cir. 1993).

     On December 20, 2007, Judge Holwell dismissed (1)
plaintiffs' claims for tortious interference, fraud in the in-

ducement, and conspiracy against all parties, and (2) plaintiffs'
claims for breach of contract and for a declaratory judgment
against all parties other than Manitou Springs (Order, dated Dec.
20, 2007 (Docket Item 37)).  Although Judge Holwell gave plain-
tiffs the opportunity to move for leave to amend, he warned that
they "should be careful to comply with Rule 11 and to address in
their motion seeking leave to amend whether or not the claims
sought to be added meet the standard of futility" (Transcript of
Proceedings, dated Dec. 20, 2007 at 5:5-5:10).

Plaintiffs' proposed amended complaint contains seven
new or previously dismissed claims.  As explained above, all of
the proposed amendments, except one are futile.  However, at
least insofar as they are advanced against Kwon and Manitou
Springs, I do not find plaintiffs' claims to be objectively
unreasonable.  See de la Fuente v. DCI Telecomms., Inc., 259 F.
Supp. 2d 250, 262 (S.D.N.Y. 2003) (McMahon, J.), citing Simon
DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d
157, 166 (2d Cir. 1999)("Claims are not frivolous simply because
they were dismissed."); see also E. Gluck Corp. v. Rothenhaus,
supra, 252 F.R.D. at 181 (mere deficiencies in pleading do not
warrant Rule 11 sanctions).

Defendants argue that sanctions should be imposed based
on Judge Holwell's admonition to plaintiffs to ensure that any
proposed amended complaint complies with Rule 11 (Defs.' Mem. in

Support at 4).  I may consider previous warnings to a plaintiff in determining whether to impose sanctions.  See Murawski v. Pataki, supra, 514 F. Supp. 2d at 590; Boyce v. New York City Mission Soc., 963 F. Supp. 290, 300 (S.D.N.Y. 1997) (Batts, J.). However, because plaintiffs repled their claims for fraud, tortious interference, and conspiracy against Kwon and Manitou Springs in significantly more detail than in their original complaint, I decline to impose sanctions on this basis.  See Boyce v. New York City Mission Soc., supra, 963 F. Supp at 300 (Rule 11 sanctions may result from "perfunctory, insubstantial or cosmetic changes" to a previously dismissed complaint).

Plaintiffs' claims against the Distributor Defendants are more troubling.[9]  As described above, there are no facts in the proposed amended complaint to support an allegation that any of these defendants committed (1) fraud in the inducement, (2) breach of contract, (3) tortious interference, (4) RICO violations or (5) conspired to commit any of other the underlying torts set forth in the proposed amended complaint.  Nonetheless,

_____

[9]Plaintiffs' contention that "in order to be frivolous, the entire pleading must be frivolous," is an incorrect statement of the law.  In fact, in the same paragraph plaintiffs assert a contradictory but correct statement.  See Plaintiffs' Memorandum in Opposition to Motion for Sanctions, dated Feb. 24, 2009 (Docket Item 86) at 4, citing Cross & Cross Props. v. Everett Allied Co., 886 F.2d 497, 504-05 (2d Cir. 1989) ("[a] complaint challenged under Rule 11(b) is not ordinarily analyzed as an indivisible unit"); see also Perez v. Posse Comitatus, supra, 373 F.3d at 325 (same).

plaintiffs swept these defendants up in alleged conduct vaguely attributed to the "defendants" or "defendants, or some of them."

I find that these claims are completely lacking in support and plaintiffs offer no evidence that they conducted a reasonable pre-filing inquiry into the evidentiary and factual support for these claims.  Plaintiffs assert in their supporting papers that "[a]ll of these parties acted in concert with one another and conspired together, as the discovery has revealed in this case," (Pls.' Mem. in Support at 3).  However, plaintiffs give no indication in any of their motion papers of any specific facts to support the newly asserted claims against the Distributor Defendants.  Pleading in this manner violates Rule 11.  See, e.g., Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin., 97 Civ. 3075 (RWS), 1998 WL 410958 at *6 (S.D.N.Y. July 22, 1998) (Sweet, J.) (imposing sanctions where plaintiff made allegations of "fraud, conspiracy, and corruption without any investigation or evidence to substantiate the claims."); Kingvision Pay-Per-View Ltd. v. Ramierez, 05 Civ. 2778 (HB), 2005 WL 1785113 at *3 (S.D.N.Y. July 28, 2005) (Baer, J.) (Rule 11 violated where there was no indication that "broad conclusory allegations" in counter-claim had evidentiary support and defendant had not suggested the existence of such support).  That plaintiffs re-asserted claims against these defendants after Judge Holwell's warning further supports a finding that plaintiffs violated Rule 11.

The imposition of sanctions under Rule 11 is "a matter
for the court's discretion."  Perez v. Posse Comitatus, supra,
373 F.3d at 326.  However, any sanction must be "limited to what
suffices to deter repetition of the conduct or comparable conduct
by others similarly situated."  Fed.R.Civ.P. 11(c)(4); In re
Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 130
(S.D.N.Y. 2007).  Among the factors to be considered in making
this determination are:

> (1) whether the improper conduct was willful, or negli-
> gent; (2) whether it was part of a pattern or activity,
> or an isolated event; (3) whether it infected the en-
> tire pleading, or only one particular count or defense;
> (4) whether the person has engaged in similar conduct
> in other litigation; (5) what effect it had on the
> litigation process in time or expense; (6) whether the
> responsible person is trained in the law; (7) what
> amount, given the financial resources of the responsi-
> ble person, is needed to deter that person from repeti-
> tion in the same case.

Colliton v. Cravath, Swaine & Moore LLP, 08 Civ 0400 (NRB), 2008
WL 4386764 at *12 (S.D.N.Y. Sept. 24, 2008) (Buchwald, J.),
citing Fed.R.Civ.P. 11 Advisory Committee Note to 1993 Amend-
ments.

Defendants do not cite any facts to support their
allegation that plaintiffs' motion was "an improper attempt to
harass the Defendants" (Defs' Mem. in Support at 5) nor do they
allege that the plaintiffs engaged in similar conduct in other
cases.  Moreover, the frivolous claims did not infect the entire
pleading and its broad allegations did not significantly delay

the litigation process or result in substantial additional in

expense.  Because plaintiffs included virtually no facts or

allegations in their complaint to support their claims, it is

unlikely that defendants spent much additional time or effort in

opposing the motion with respect to the Distributor Defendants.

Similarly, these baseless allegations did not significantly delay

the resolution of the motion for leave to amend.  See Oliveri v.

Thompson, 803 F.2d 1265, 1280 (2d Cir. 1986) (declining to impose

sanctions where it was "doubtful whether anyone gave these claims

serious consideration or devoted any significant work toward

disposing of them").

          Therefore, although plaintiffs conduct ran afoul of

Rule 11, as a matter of discretion I decline to impose sanctions

in this case.  See Perez v. Posse Comitatus, supra, 373 F.3d at

325-26 ("Even if the district court concludes that the assertion

of a given claim violates Rule 11 . . . the decision whether or

not to impose sanctions is a matter for the court's

discretion."); Milani v. Int'l Bus. Mach. Corp., Inc., 02 Civ.

3346 (MBM), 2004 WL 3068451 at *2 (S.D.N.Y. June 28, 2004)

(Mukasey, J.) ("[a] finding that someone has engaged in

sanctionable conduct . . . itself carries a sting"); See, e.g.,

Abdelhamid v. Altria Group, Inc., supra, 515 F. Supp. 2d at 400

(declining to impose monetary sanctions because, inter alia,

there was "no evidence of bad faith or intent to harass or in-

jure"); C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd., 774 F. Supp.
146, 155-56 (S.D.N.Y. 1991) (Carter, J.) (reprimand of attorney
sufficient where document contained frivolous and non-frivolous
arguments and it was unlikely that defendants had incurred addi-
tional costs in opposing frivolous arguments); see also
Kingvision Pay-Per-View Ltd. v. Ramierez, supra, 2005 WL 1785113
at *3 (declining to impose sanctions where there was no eviden-
tiary record with which to compare seemingly baseless allega-
tions); Baker v. Dorfman, supra, 2000 WL 1201467 at *5 (despite
frivolous claims, the deterrent purposes of Rule 11 were served
without monetary sanctions where doing so would result in further
litigation).

IV.  Conclusion

       Accordingly, for all the foregoing reasons, plaintiffs'
motion to for leave to amend the complaint (Docket Item 64) is
granted insofar as it seeks to include a claim for breach of
fiduciary duty through conspiracy against Manitou Springs and
Kwon and denied in all other respects.  With respect to Defen-
dants' Motion for Sanctions, although I find that plaintiffs

48

violated Fed.R.Civ.P. 11(b) (Docket Item 79), I decline to impose

sanctions under Fed.R.Civ.P. 11(c) and the motion is denied.


Dated:   New York, New York
         September 29, 2009

                                        SO ORDERED


                                        HENRY PITMAN

Copies transmitted to:

Michael S. Kimm, Esq.
Suite 272
190 Moore Street
Hackensack, New Jersey 07601

Andrew A. Kimler
Capell & Vishnick, LLP
3000 Marcus Avenue
Lake Success, New York 11042