# VISHNICK MCGOVERN MILIZIO LLP
### ATTORNEYS AT LAW

September 20, 2010

Andrew A. Kimler
Partner
t. 516.437.4385 x122
Akimler@vmmlegal.com

*via ecf & Federal Express*
Honorable Richard J. Holwell
United States District Court
500 Pearl Street
New York, NY 10007

Re:   Ho Myung Moolsan Co., Ltd., and Hyun-Song Kang v.
      Manitou Mineral Water, Inc.
      SDNY Case No.: 07 CIV 7483

Dear Judge Holwell:

Please be advised that we represent the Defendant in the above-captioned matter which is currently scheduled for trial on October 25, 2010. We write this letter brief in support of Defendant's *in limine* application for an Order precluding the plaintiffs from introducing at trial the testimony of Don Smith, one of their expert witnesses.

## BACKGROUND

This case is a contract dispute between the Plaintiff corporation, Ho Myung Moolsan Co., Ltd ("Moolsan"), and the Defendant corporation, Manitou Mineral Water, Inc. ("Manitou"), in connection with the sale of mineral water from Manitou to Moolsan in Korea. The parties' installment contract for water shipments that was executed in December of 2005 provides that Plaintiffs' orders for water must be in writing and must be made "normally three months in advance." See Exhibit "A" (Contract). Between August of 2006 and April of 2007, Manitou shipped to Moolsan approximately 300,000 bottles of water pursuant to the terms of the parties' contract. In August of 2007, Moolsan refused to accept any shipments of water, in effect cancelling the entire contract, based on its allegation that Manitou was late in its shipment of certain alleged Orders for water.

It is undisputed that Moolsan was a start up organization without any established market attempting to sell mineral water for $15.00 a bottle in Korea. Moolsan failed to provide any documentation showing its sale of water despite demands for the same. Moolsan's president testified that Moolsan's sale of water totaled 300,000 bottles of water in Korea over an 11 month period of which one-half were given away. See Exhibit "C" at pp. 108-111 (Kim deposition). Since Moolsan claims that it utilized the pre-existing sales force of a separate company, Hwa Jin, which they claim consists of 70,000 sales people, each sales person sold on average two bottles of water over an 11 month period.

# VISHNICK McGOVERN MILIZIO LLP
**ATTORNEYS AT LAW**

September 20, 2010
Page 2

## THE EXPERT REPORT OF DON SMITH

In support of its breach of contract claim the Plaintiff submitted the expert report of Don Smith. See Exhibit "B". As stated in his report, Mr. Smith's proposed testimony covers five separate opinions. The first four opinions stated in the report provide Mr. Smith's opinions as to the parties' alleged legal obligations under the parties' contract. The fifth point provides Mr. Smith's opinion as to Plaintiff's alleged lost profits based on its allegation that Defendant breached the parties' contract. Specifically, Mr. Smith opined as follows:

1. The parties' contract did not require Moolsan to issue purchase orders for water;

2. The parties' contract required Manitou to provide 100% of its output to Moolsan;

3. Manitou violated Moolsan's exclusivity and trademarks;

4. Moolsan did not require Manitou to provide ½ litre bottles of mineral water; and

5. Moolsan's economic loss for lost profits is $133,293,878.

It is respectfully submitted that Mr. Smith's expert report and proposed testimony should be excluded at trial because: (1) several of Mr. Smith's conclusions trespass on the province of the jury and the trial court by making ultimate findings of fact and legal conclusions regarding the parties' obligations under the parties' contract; and (2) the conclusions are based on speculative and unfounded assumptions.

## ARGUMENT

I. INTRODUCTION

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3)

the witness has applied the principles and methods reliably to the facts of the case.

Thus, the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand," Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993), and "the admission or exclusion of expert testimony rests soundly in the broad discretion of the trial court." In re: Air Disaster at Lockerbie Scotland v. Pan American World Airways, Inc., 37 F.3d 804, 824 (2d Cir. 1994; see also Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)("It is well established that the trial court has broad discretion in the matter of the admission or exclusion of expert evidence."). Accordingly, a court may "refuse to entertain expert testimony it thinks unhelpful, cumulative, confusing to the jury, or more prejudicial than probative." Id. Similarly, expert testimony should be excluded "if it is speculative or conjectural, or if it is based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence an 'apples and oranges' comparison.'" see Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)(internal citations omitted)(excluding an expert's testimony regarding lost future earnings as speculative because it was based on unrealistic assumptions regarding the plaintiff's future employment prospects).

Here, as discussed below, Mr. Smith's proposed testimony fails to meet the standards established by Rule 702 and applicable case law.

II. Testimony Regarding Mr. Smith's First Four Opinions in his Report should be Precluded Because the Opinions are Speculative and the Opinions Improperly Provide Legal Conclusions Regarding the Parties' Obligations Under the Parties' Contract

It is well-settled in the Second Circuit that "[t]his circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion." Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir. 1992). Similarly, an expert is not permitted to give his opinion as to the legal obligations of the parties under a contract, or otherwise engage in contract interpretation. Marx & Co. V. Fugazy, 550 F.2d 505 (2d Cir. 1977)(ruling, for example, that an expert's testimony regarding what constituted "best efforts" under the contract should have been excluded since they were "legal opinions as to the meaning of the contract terms at issue [and] testimony concerning matters outside his area of expertise" and "the question of interpretation of the contract is for the jury and the question of legal effect is for the judge."). "Moreover, experts may not testify to the question of where liability lies in a particular case," CSC Consulting, Inc. v. Thinkchain, Inc., 2004 WL 692382 (2d Cir. April 1, 2004), nor can they testify as to facts that the jury can decide on its own without his help. In re Fosamax Prods. Liab. Litig., 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009)("expert testimony is not helpful if it simply addresses lay matters which the jury is capable of understanding and deciding without the expert's help."). As stated by the Second Circuit, the rules governing the

admissibility of expert testimony "were not designed to open the door for the admission of all sorts of expert opinions thereby trespassing on the province of the jury and the trial court." Fiatarulo v. U.S., 8 F.3d 930 (2d Cir. 1993).

Here, it is respectfully submitted that each of Mr. Smith's first four opinions should be precluded because each involve legal and factual conclusions that do not require expert testimony and 'trespass on the province of the jury and trial court.'

In his first opinion, Mr. Smith concludes that the parties' contract does not require Moolsan to issue purchase orders pursuant to the parties' contract. See Exhibit "B" p. 3. It is respectfully submitted that this opinion is a simple question of contract interpretation that is improper for expert testimony. Moreover, Mr. Smith's opinion simply ignores the plain wording of the parties' contract that provides that orders for water must be in writing and must be made "normally three months in advance." See Exhibit "A" (Contract). This issue, however, is beyond the expertise of Mr. Smith.

In his second opinion, Mr. Smith concludes that the parties' contract is an "exclusive" contract that requires Manitou to provide 100% of its output to Moolsan. See Exhibit "B" p. 5. Once again, this opinion is a question of contract interpretation that is improper for expert testimony. Moreover, although Mr. Smith concludes that based on his "experience" the contract is exclusive, the plain wording of the contract provides that "global sales rights will be discussed 6 months from now." See Exhibit "A" (Contract).

In his third opinion, Mr. Smith opines that Manitou "clearly violated Moolsan's exclusivity and trademarks." See Exhibit "B" p. 6. Initially, the issue of trademark is no longer relevant since Moolsan's amended complaint no longer contains a cause of action for trademark infringement. In any event, although Defendant disputes Mr. Smith's conclusory finding, Mr. Smith's conclusion that Manitou has breached the parties' contract is an ultimate finding of fact for the jury that is improper for expert testimony.

In his fourth opinion, Mr. Smith opines that Moolsan did not require that Manitou provide ½ litre bottles of mineral water. See Exhibit "B" p.8. Mr. Smith's bases his opinion on the testimony of the Plaintiff's president and Plaintiff's 2006 marketing plan. Id. Mr. Smith wholly ignores Defendant's contention throughout this litigation that Manitou retrofitted its factory to accommodate the Plaintiffs' request to produce ½ litre bottles of water. See Exh "D" ¶30-31 (Kwon Affidavit); Exhibit "E" at pp. 71:13-72:10(Kwon Deposition); Exhibit "F" at pp. 60:13-25; 61:13-20; 79:16-80:11; 87:17-88:18 (Jhon Deposition). As such, Mr. Smith's conclusory opinion that Moolsan did not request ½ litre bottles is merely a disputed question of fact that will be determined largely based

on the credibility of the witnesses and is solely within the province of the jury to decide.

In sum, the opinions set forth above are beyond the scope of admissible expert testimony under the Federal Rules of Evidence. As such, Plaintiff should be precluded from introducing the report and testimony of Mr. Smith regarding the above opinions.

III. Testimony Regarding Mr. Smith's Opinion Regarding Lost Profits Should be Precluded Because his Conclusions are Based on Speculation and Conjecture

In his final conclusion, Mr. Smith opines that Moolsan's economic loss for lost profits is $133,293,878. See Exhibit "B" p.9. It is respectfully submitted that Mr. Smith's testimony should be precluded because his opinion is based on speculation and conjecture.

With regard to a claim for lost profits, "in the case of a new business seeking to recover loss of future profits, a strict standard is imposed for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty . . . ." Kenford v. County of Erie, 67 N.Y.2d 257, 502 N.Y.S.2d 131 (1986). Accordingly, for a new business venture, lost profit claims must be "certain, specific and precise," and cannot "rest on a series of assumptions and projections." See Dupont Flooring Systems, Inc. v. Discovery Zone, Inc., No. 98 Civ. 5101 (SHS), 2004 WL 1574629 at 7 (S.D.N.Y.). Simply stated, a claim for lost profits on a new business venture may not rest on projections based on speculative assumptions. See e.g., Trademark Research Co. v. Maxwell Online, Inc., 995 F.2d 326 (2nd Cir. 1993); International Telecom, Inc. v. Generadora Electirac del Oriente, 2004 WL 784941 (S.D.N.Y. April 13, 2004).

In Herman Schwabe, Inc. v. United Shoe Machinery Corp., 297 F.2d 906 (2d Cir. 1962), the Second Circuit affirmed the District Court's exclusion of damage testimony by the plaintiff's expert, an economist who based his conclusions upon a number of assumptions and speculations regarding the market penetration rate of certain shoe machinery. The Second Circuit specifically ruled that "no basis had been established for the assumption" of the expert's growth rates and that "there was no evidence" or "there was no showing" that plaintiff would be as successful in the future as estimated by the expert. Id. In affirming the lower court's exclusion of the unfounded expert testimony, the Second Circuit noted that the court's job to protect the jury from improper evidence is "especially pertinent to an array of figures conveying a delusive impression of exactness in an area where a jury's common sense is less available than usual to protect it…. When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out." Id. at 912 (internal citations omitted); see also Helft v. Allmerica Financial Life Insurance and Annuity Co., 2009 U.S. Dist.

# VISHNICK McGOVERN MILIZIO LLP
**ATTORNEYS AT LAW**

September 20, 2010
Page 6

Lexis 24682 (N.D.N.Y. March 26, 2009)(precluding the report and testimony of plaintiffs' damages expert because the conclusions were "not based on sufficient facts or data to be reliable" and "not supported by relevant evidence").

Here, Mr. Smith's calculations for lost profits rest on purely speculative projections and assumptions.

It is undisputed that Moolsan was a start up organization without any established market. Moolsan has failed to provide any documentation showing its sale of water despite demands for the same. Despite this fact, Mr. Smith bases lost profits for a period of ten years. See Exhibit "B" p.8. Although the contract term itself is for only five years, Mr. Smith calculates lost profits for a ten year period based on his totally unsupported assumption that "[u]nless there is a breach of the contract, it is customary for such contracts to be renewed for at least an additional five years." See Exhibit "B" p.9.

In addition, Mr. Smith bases his projection on an assumption that Plaintiff will be able to establish a market for mineral water in Korea at a price of $15 per litre which he claims plaintiff was "successfully selling" in Korea. As noted above, however, there is no evidence of plaintiff's sales. See Exhibit "B" p.11. Mr. Smith also apparently accepts the price of $15.00 per litre as competitive despite the fact that in his own report he states that the price for similar products in Korea is $.60 to $1.20 per litre. Id.

With regard to the growth rate, Mr. Smith assumes that Manitou would ship 1 million bottles in 2006, which would grow to approximately 3 million bottles per year by 2010. See Exhibit "B" p.9. Mr. Smith, however, does not provide any evidentiary basis for this growth rate other than "my experience and expertise," the speculative deposition testimony of the Plaintiff's president, Jeong Hee Kim, and the Plaintiffs' "Sales Plan" that was drafted by Ms. Kim. At her deposition, however, Ms. Kim was unable to provide any support for the assumption for a growth rate of 25%. See Exhibit "C" at pp 278-295. Nor was Ms. Kim able to provide a basis for the growth rate when she drafted the sales plan. Id. Ms. Kim testified that at the time the sales plan was drafted, there was no history of sales for mineral water at Moolsan and Moolsan did not retain the services of an outside vendor or any market research specialist to calculate the growth rates and projections. Id

In sum, Mr. Smith's opinion regarding alleged lost profits is based on unsupported speculative assumptions. As such, it is respectfully submitted that his testimony regarding lost profits should likewise be precluded.

Case 1:07-cv-07483-RJH-HBP   Document 137   Filed 09/20/10   Page 7 of 7

# VISHNICK MCGOVERN MILIZIO LLP
**ATTORNEYS AT LAW**

September 20, 2010
Page 7

## Conclusion

Based upon the foregoing, Defendant respectfully requests that this Court enter an order precluding plaintiffs from introducing the report and testimony of Don Smith, a witness retained by the plaintiffs in this case, to testify as an expert at trial.

Respectfully,

By: Andrew A. Kimler, Esq.
Michael J. Stacchini, Esq.
VISHNICK McGOVERN MILIZIO LLP
Attorneys for Defendants
3000 Marcus Avenue, Suite 1E9
Lake Success, New York 11042
(516) 437-4385